No. 74,272

PEGGY GASSMANN, *Appellant*, v. THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, INC., *Appellee*.

933 P.2d 743

Opinion filed March 7, 1997.

*Steven W. Hirsch*, of Hirsch & Pratt, LLP, of Oberlin, argued the cause, and *Preston A. Pratt*, of the same firm, was with him on the briefs for appellant.

*Christopher R. Hedican*, of Berens & Tate, P.C., of Omaha, Nebraska, argued the cause, and *Christopher E. Hoyme* and *Timothy M. Welsh*, of the same firm, and *Joseph W. Jeter*, of Jeter and Moran, of Hays, were with him on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This case concerns application of the after-acquired evidence doctrine to a wrongful discharge case involving breach of implied contract and not raising public policy concerns. The district court granted defendant Evangelical Lutheran Good Samaritan Society, Inc.'s (Good Samaritan) motion for summary judgment against plaintiff Peggy Gassmann's petition for wrongful discharge, applying the after-acquired evidence doctrine. The doctrine had

never been adopted by any Kansas appellate court. The Court of Appeals decided that the after-acquired evidence doctrine would apply but that material issues of fact remained about whether Gassmann was guilty of misconduct and whether her actions would have justified discharge. *Gassmann v. Evangelical Lutheran Good Samaritan Society, Inc.*, 22 Kan. App. 2d 632, 921 P.2d 224 (1996). We granted Good Samaritan's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

The questions for review are whether the after-acquired evidence doctrine is applicable in a wrongful discharge case and whether genuine issues of material fact exist concerning whether Gassmann's action was misconduct justifying discharge.

We adopt the after-acquired evidence doctrine and hold that material facts remain at issue, requiring remand to the district court.

## FACTS

The facts set out by the Court of Appeals are:

"Good Samaritan is a corporation which owns and operates nursing homes in many states throughout the Midwest, one of which is the Decatur County Good Samaritan Center in Oberlin. Gassmann worked at Good Samaritan from September 16, 1985, to December 10, 1993, as a certified nurse's aide. She was terminated for inconsiderate treatment of residents. On June 27, 1994, Gassmann filed a wrongful discharge lawsuit based upon Good Samaritan's violation of an implied employment contract and violation of public policy. She sought an award for back pay and reinstatement.

"At her September 17, 1994, deposition, Gassmann admitted that while she was still employed at Good Samaritan, she entered the office of the acting director of nursing without authorization and took a videotape of a company in-service meeting. She copied the videotape and then returned it to the office the next morning. In her deposition testimony, Gassmann agreed that the purpose for taking the tape was to serve as evidence in an effort to get rid of the acting facility director.

"On December 5, 1994, Good Samaritan filed a motion for summary judgment. The basis for the motion was neither the implied contract nor the facts surrounding Gassmann's termination, but instead was the evidence acquired during her deposition concerning the videotape. Good Samaritan requested that the district court adopt the after-acquired evidence doctrine, *i.e.*, evidence discovered after an employee's termination can be used to justify the discharge, if the evidence would have also been sufficient to terminate the employee, and grant its motion.

"Good Samaritan submitted an affidavit from its administrator indicating that all employees received an employee handbook which states that any employee will be terminated if found to have engaged in 'theft from coworker(s), resident(s), and/or the facility.' Gassmann acknowledged receipt of copies of all Good Samaritan's employee handbooks. The administrator stated that if Gassmann had still been employed when he learned of the 'theft' of the videotape, he would have immediately terminated her.

"In her affidavit, Gassmann explained that all employees of Good Samaritan were required to either attend all in-service meetings or, if unable to attend, watch the videotape of the meeting. The facility director became upset at a particular in-service meeting, and Gassmann stated she wanted to watch the videotape of that meeting because she had missed the meeting. Gassmann also stated that prior to her termination, there had been much dissension between the employees and management of Good Samaritan. However, Gassmann contends she had no intent to use the videotape in an effort to get the acting director fired. Contrary to her deposition, she stated in her affidavit, 'I made the copy in order to preserve the tape because I was afraid the tape, which showed the director acting inappropriately, would "get lost." I did not make the copy in a mutinous attempt to get [the director] fired.'

"Gassmann also submitted the affidavit of Lila Keenan, a former employee of Good Samaritan. Keenan confirmed Gassmann's statements that all Good Samaritan employees were required to watch the videotape of any missed in-service meetings. Keenan stated the only rule regarding taking videotapes was that they were to be returned quickly so others would be able to watch them. Keenan maintained she had taken a videotape home before to watch a missed in-service meeting and then returned it. Keenan did not believe this violated a company policy." 22 Kan. App. 2d at 632-34.

## DISCUSSION

### Court of Appeals' Opinion

The Court of Appeals affirmed the district court's determination that the after-acquired evidence doctrine applied. As to ordinary wrongful discharge breach of employment contract cases not involving any overriding governmental interest, the Court of Appeals said:

"[W]e find the limits placed on the after-acquired evidence doctrine disseminated in *McKennon* [*v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360, 130 L. Ed. 2d 852, 115 S. Ct. 879 (1995),] are not applicable to the case at bar and hold that this employee is not entitled to any relief if the employer can establish after-acquired evidence sufficient for termination." 22 Kan. App. 2d at 644.

We agree. The Court of Appeals, citing *McKennon*, 513 U.S. at 361-63, identified the following three-prong test for an employer to rely on in asserting the defense of after-acquired evidence: "An employer must satisfy the following conditions: (1) The plaintiff was guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified discharge; and (3) if the employer had known of the misconduct, the employer would have discharged the plaintiff." 22 Kan. App. 2d at 645. The Court of Appeals affirmed that the third prong was satisfied, but reversed on the first two prongs, finding issues of material fact, and remanded.

### Good Samaritan's Petition for Review

Good Samaritan did not seek review of the Court of Appeals' holding that the after-acquired evidence doctrine applied. Gassmann has not cross-petitioned for review on any issue.

Under Rule 8.03(a)(5)(c) (1996 Kan. Ct. R. Annot. 48), applicability of the after-acquired evidence issue is "fairly included" in the two issues upon which Good Samaritan seeks review. Those two issues concern whether genuine issues of material fact remain as to two of the three *McKennon* prongs needed for application of the after-acquired evidence doctrine. The material fact issues necessarily involve determining whether the after-acquired evidence doctrine should be considered applicable in Kansas wrongful discharge cases based on implied contract. We reason that the after-acquired evidence issue is before us.

The Court of Appeals' opinion addressed the definition and rationale of the after-acquired evidence doctrine:

"The after-acquired evidence doctrine in its purest form allows an employer to be relieved of liability in a wrongful discharge lawsuit where it is discovered, normally during litigation, that the employee was guilty of pre-discharge misconduct sufficient for termination that the employer was unaware of and was not relying upon for discharge. See *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988); Yoo, *The After-Acquired Evidence Doctrine*, 25 Colum. Hum. Rts. L. Rev. 219, 228 (Fall 1993) (the *Summers* rule). The after-acquired evidence doctrine has its foundation in the logic that an employee cannot complain about being wrongfully discharged because the individual is no worse off than he or she would have been had the truth of his or her misconduct been presented

at the outset. See Annot., *After-Acquired Evidence of Employee's Misconduct as Barring or Limiting Recovery in Action for Wrongful Discharge*, 34 A.L.R. 5th 699, 707." 22 Kan. App. 2d at 634-35.

Although Gassmann's petition alleges in conclusory fashion that she was wrongfully discharged in violation of public policy, she offers no evidence to show that her termination raised any public policy concerns. She does not claim that her discharge was retaliatory or based on any form of discrimination. She claims that: (1) under the implied employment agreement, she could be terminated only for good cause, (2) Good Samaritan did not follow the procedure for termination outlined in the personnel handbook, and (3) the reason for her termination (inconsiderate treatment of residents) had no factual basis. Gassmann's claim is founded on breach of an implied employment contract and raises only private concerns.

The Court of Appeals' three-pronged test for application of the after-acquired evidence doctrine is derived from the following language in *McKennon*, 130 L. Ed. 2d at 864:

"Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. . . .

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."

There is no reason why the after-acquired evidence doctrine should not apply if the three-prong test of *McKennon* can be satisfied. Also, the Court of Appeals' reliance on *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993), although it is a pre-*McKennon* case, is not inconsistent with the way other jurisdictions have applied the after-acquired evidence doctrine in post-*McKennon* cases. See, *e.g., Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 41 Cal. Rptr. 2d 329 (1995) (summary judgment for employer affirmed against employees' claims of wrongful discharge in violation of public policy; after-acquired evidence doctrine applied based on resume fraud);

*Mitchell v. John Weisner, Inc.*, 923 S.W.2d 262 (Tex. App. 1996) (Although reversing summary judgment for employer and declining to apply after-acquired evidence doctrine in retaliatory discharge/resume fraud case, Texas Court of Appeals discussed the public policy reasons why the doctrine should not protect an employer in a retaliatory discharge situation.).

## Gassmann's Employment Status

The district court in its memorandum decision described this case as a "wrongful discharge case premised on an alleged breach of an implied contract and violation of public policy." If in fact Gassmann is an employee-at-will, her claim would fail and the after-acquired evidence doctrine would be irrelevant.

We affirm application of the after-acquired evidence doctrine to a wrongful discharge case based on breach of implied contract that raises no public policy concerns. Gassmann is not entitled to any relief if Good Samaritan can establish after-acquired evidence sufficient for termination.

## Do Genuine Issues of Material Fact Remain?

Our standard of review on summary judgment is stated in *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

The Court of Appeals decided that the third *McKennon* prong (if the employer had known of the misconduct, the employer would have discharged the plaintiff) of the after-acquired evidence doctrine test was satisfied, and neither party sought review of that determination. However, we consider review of that prong included in review of the question of whether the other two prongs were satisfied. The Court of Appeals found that material issues of fact remained as to the first two prongs. We agree and find material issues of fact remain as to the third prong, as well.

Good Samaritan attached to its motion for summary judgment the affidavit of its administrator, Craig Goth, which provided in pertinent part:

"3. The Employee Handbook distributed to all employees requires immediate termination for any employee found to have engaged in 'theft from coworker(s), resident(s), and/or the facility.' There are no exceptions to this policy.

"4. Pursuant to express Company policy, I would have been required to immediately terminate Peggy Gassmann once I learned of her theft of Company property.

"5. If Gassmann would have still been employed by Good Samaritan at the time I learned of her theft of Company property, I would have immediately terminated her."

The affidavit only mentions Gassmann's "theft of Company property." It does not describe what the theft was or identify Gassmann's misconduct. Is Good Samaritan claiming that Gassmann's taking the videotape home was the act of theft (although it was returned the next morning)? Is Gassmann's copying of that tape considered by Good Samaritan to be the theft? Goth's affidavit does not answer even these initial questions. The affidavit does not discuss whether Good Samaritan had a policy requiring employees to watch videotapes of in-service meetings they did not attend, or whether Good Samaritan allowed employees to take those tapes home to watch. If Good Samaritan allowed employees to take the videotapes home to watch, then Gassmann's taking the tape home, watching it, and returning it the next morning would not be theft. The affidavit provides no information about what Good Samaritan's policies were regarding the in-service meeting videotapes.

Gassmann's affidavit contradicts her deposition testimony to the extent she claims in her affidavit that the only restriction on taking home videotapes of in-service meetings was to return them for others to watch. Questions of fact cannot be created by affidavit statements in response to a properly supported motion for summary judgment when the affidavits contradict prior deposition testimony. *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 42, 47, 661 P.2d 348 (1983). Even if the contradicted portions of Gassmann's affidavit are discounted, the Keenan affidavit remains.

Neither the Gassmann nor Keenan affidavits said that Gassmann's copying of the videotape was within the bounds of company policy. However, Good Samaritan is not relying on Gassmann's breach of confidentiality in arguing that the after-acquired evidence doctrine should apply. Good Samaritan relies solely on theft. In *McKennon*, the discharged employee's misconduct (taking home confidential company financial records) concerned her breach of

confidentiality. Good Samaritan presented no evidence regarding confidentiality in its motion for summary judgment. Even assuming Good Samaritan had presented confidentiality evidence, if Good Samaritan routinely allowed its employees to take home videotapes of in-service meetings to watch, there is a question as to the confidentiality of those tapes. The purpose for which Gassmann took home the tape, copied it, and gave the copy to Keenan, although relevant to show a breach of confidentiality or lack of loyalty, seems less relevant to whether a theft occurred.

The Goth affidavit is so conclusory that none of the *McKennon* prongs are satisfied. All the Goth affidavit establishes is that if Gassmann had committed theft of company property and Good Samaritan had known about it, Gassmann would have been terminated, as provided by the personnel handbook. The affidavit never identified what Good Samaritan considered to be Gassmann's act of theft. The Goth affidavit does not say that had Good Samaritan known that Gassmann had taken home a videotape, copied it, and returned the original videotape, Good Samaritan would have fired her. Gassmann contradicted the conclusory allegation of theft with the two affidavits asserting that Good Samaritan allowed its employees to take the videotapes home to watch, so long as they were returned.

The Court of Appeals compares the definition of criminal theft under K.S.A. 21-3701(a), urged by Gassmann, and the dictionary definition, urged by Good Samaritan. "Theft" is not defined in the employee handbook. However, regardless of which definition is applied, the answer to the question of whether Good Samaritan allowed its employees to take videotapes home to watch will bear significantly on the theft issue. Material issues of fact remain.

The Court of Appeals is affirmed in adopting the after-acquired evidence doctrine. The Court of Appeals is also affirmed in its holding that there remained material fact issues as to the first two *McKennon* prongs. We broaden the remand to the district court and reverse summary judgment on all three prongs.

LARSON, J., not participating.

E. NEWTON VICKERS, Senior Judge, assigned.