495 S.E.2d 440

**Douglas LEWIS, Plaintiff,**

v.

**FISHER SERVICE COMPANY, Defendant.**

**No. 24745.**

Supreme Court of South Carolina.

Heard Oct. 7, 1997.

Decided Jan. 12, 1998.

Herbert W. Louthian and Herbert W. Louthian, Jr., both of Louthian & Louthian, Columbia, for plaintiff.

Leigh M. Nason and Charles T. Speth, II, both of Haynsworth, Baldwin, Johnson and Greaves, P.A., Columbia, for defendant.

TOAL, Justice:

This matter is before the Court on certification from the United States District Court to answer questions related to the defense of after-acquired evidence in employee handbook breach of contract cases.

### FACTUAL/PROCEDURAL BACKGROUND

In 1984, Douglas Lewis was hired as a machinist by Fisher Service Company ("Employer"). On the day Lewis began working for Employer, he received a copy of a manual entitled "Practices and Policies." The manual provided for a progressive discipline policy, but also contained an override provision stating that when an employee's conduct violated "very serious and widely-recognized behavior standards," the employee could be terminated on the first offense.

In April 1991, Lewis applied for a position as a quality control inspector and was interviewed by supervisor Andy Simpson. Using a pocket tape-recorder, Lewis tape-recorded his meeting with Mr. Simpson. The tape of the interview was later played in the break area for other employees. When Employer learned of the taping incident, it determined that Lewis had violated "very serious and widely-recognized behavior standards." Employer terminated him without engaging in progressive discipline.

As a result, Lewis brought a breach of contract action against Employer. In his complaint, Lewis contended that Employer demoted and then discharged him in violation of the

progressive discipline policies contained in Employer's employee handbook. *See Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987). The case was initially tried in June 1993.

At trial, Lewis contended that he told Simpson the interview would be taped. Lewis further claimed that a fellow employee had played the tape in the break area for other employees to hear. Employer asserted that the taping was done surreptitiously and that it was Lewis who played the tape in the break area.

The jury returned a verdict in favor of Lewis in the amount of $400,000 actual damages, representing back pay and front pay. For reasons unrelated to this certification, the Court set aside the first verdict and ordered a new trial on both liability and damages. The case was tried again in June 1994, and the second jury awarded Lewis $355,000.

After the second verdict, Employer moved for a judgment as a matter of law, or, alternatively, for a new trial. Employer argued that the surreptitious taping of an interview with a superior, coupled with the later playing of that tape for other employees, justified Lewis's immediate termination. The Court found that the surreptitious taping of an employee interview was sufficiently serious to warrant a bypass of the progressive discipline policy contained in Employer's employee handbook. The Court, viewing the evidence in the light most favorable to Lewis, determined that (1) the jury could have found that Lewis told Simpson the tape was being made, and (2) the jury could have found that another employee, and not Lewis, played the tape for other employees.

After determining that the verdict should not be disturbed, the Court was then called upon to address the after-acquired evidence doctrine. Subsequent to Lewis's initiation of this action, Employer learned during a deposition that Lewis had engaged in other acts of misconduct justifying his termination. Specifically, Lewis admitted in his deposition that he had surreptitiously taped one or perhaps two other interviews with members of management. Unlike the Simpson episode, however, it is undisputed that Lewis never told the other parties to these conversations that they were being taped. Lewis admitted that before his termination he had secretly recorded

a conversation with general manager David Suk, without Suk's knowledge, and had "probably" surreptitiously recorded a conversation with shop manager Jeff Klatt. At trial, Suk testified that the act of secretly tape-recording a member of management constituted serious misconduct. He further testified that he was unaware Lewis had recorded conversations with him and that had he known Lewis was making the surreptitious recordings, he would have immediately terminated Lewis.

A determination of whether, and to what extent, South Carolina recognizes the after-acquired evidence doctrine in employee handbook cases would enable the federal District Court to dispose of the post-trial motion now pending before it. Accordingly, the following questions have been certified to this Court:

1. Does South Carolina recognize the after-acquired evidence doctrine as a defense to an action brought by an employee terminated in violation of the progressive discipline policy of an applicable employee handbook?

2. If the answer to question one is in the affirmative, in what form and to what extent is the defense of after-acquired evidence recognized in South Carolina? Specifically, may the doctrine be used to avoid liability altogether, or to avoid liability from the date of discovery forward (thus allowing a back pay award from the date of termination until the date of discovery), or to avoid liability from the date of judgment forward (thus allowing a recovery of back pay from the date of termination until the date of judgment)?

## LAW/ANALYSIS

■ The questions certified in this action ask us to determine whether, and to what extent, the after-acquired evidence doctrine applies in employee handbook breach of contract actions. The answers to these questions need to be sought within the context of the historical development of the after-acquired evidence doctrine and the rationales underlying its application.

## A. Development of the After–Acquired Evidence Doctrine

*Summers v. State Farm Mutual Automobile Insurance Company,* 864 F.2d 700 (10th Cir.1988) provides a starting point for consideration of the after-acquired evidence doctrine. In this seminal case, an employee brought an action against State Farm for discrimination on the basis of age and religion. In the course of discovery, State Farm found evidence of 150 instances where the employee had falsified records. It sought to have this evidence admitted against employee. On appeal, the Tenth Circuit held that such after-acquired evidence could be admitted to bar relief for the employee. In reaching its conclusion, the Court gave the following analogy that has since been often cited in discussions about the after-acquired evidence doctrine: "The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor.' In our view, the masquerading doctor would be entitled to no relief. . . ." *Summers,* 864 F.2d at 708.

In *Wallace v. Dunn Construction Company,* 968 F.2d 1174 (11th Cir.1992), the Eleventh Circuit rejected the *Summers* rule that after-acquired evidence may "effectively provide an affirmative defense to Title VII liability." *Wallace,* 968 F.2d at 1181. *Wallace* declared that the *Summers* rule was "antithetical to the principal purpose of Title VII—to achieve equality of employment opportunity by giving employers incentives to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible, employment discrimination." *Wallace,* 968 F.2d at 1180 (internal citations omitted). Instead, the Eleventh Circuit held that after-acquired evidence may be allowed on the issue of damages.

In 1995, the split between the federal circuits was resolved by the United States Supreme Court in *McKennon v. Nashville Banner Publishing Company,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). *McKennon* involved an action brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). The Supreme Court noted that the ADEA and Title VII share common substantive features and also a common purpose: the elimination of discrimination in the

workplace. Deterring discrimination and compensating for injuries caused by prohibited discrimination are two objectives of these statutes. The *McKennon* Court wrote that "It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." *McKennon*, 513 U.S. at 358, 115 S.Ct. at 884, 130 L.Ed.2d at 861. The Supreme Court unanimously reversed the lower court, which had allowed after-acquired evidence to serve as a complete bar to recovery.

*McKennon* rejected the use of after-acquired evidence on the issue of liability; however, it did consider the evidence relevant to the remedy to be ordered: "The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored." [1] *McKennon*, 513 U.S. at 361, 115 S.Ct. at 886, 130 L.Ed.2d at 863. The Supreme Court set the following threshold standard for admitting after-acquired evidence:

Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

*McKennon*, 513 U.S. at 362–63, 115 S.Ct. at 886–87, 130 L.Ed.2d at 864.

We adopted the *McKennon* standard in *Baber v. Greenville County*, 327 S.C. 31, 488 S.E.2d 314 (1997) in the context of a whistleblower's suit. Baber had brought an action, under the Whistleblower's Act, alleging he was terminated as a result of his refusal to delete portions of an audit report he had prepared detailing the County Tax Collector's waiver of penalties for certain parties. The trial court allowed the County to introduce evidence acquired during discovery concerning Baber's poor job performance on the tax audit; however, the court charged the jury not to consider the after-acquired

---

1. The Court stated that although as a general rule reinstatement and front pay would not be appropriate, backpay is possible in instances of employee misconduct discovered after termination. The calculation of the backpay is from "the date of the unlawful discharge to the date the new information was discovered." *McKennon*, 513 U.S. at 362, 115 S.Ct. at 886, 130 L.Ed.2d at 864.

evidence. On appeal, we accepted the *McKennon* test for determining whether after-acquired evidence may be used to limit employee damages. We concluded that the wrongdoing was not of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

A number of other jurisdictions have also followed the *McKennon* approach of allowing, in certain cases, after-acquired evidence on the issue of damages. Recently, the Texas Supreme Court adopted the *McKennon* test, holding that after-acquired evidence can serve as a limitation on an employee's recovery for a retaliatory discharge claim brought under the Texas Workers' Compensation Act. *Trico Technologies Corp. v. Montiel,* 949 S.W.2d 308 (Tex.1997). Likewise, in *Walters v. United States Gypsum Company,* 537 N.W.2d 708 (Iowa 1995), the Iowa Supreme Court adopted the *McKennon* standard for purposes of retaliatory discharge/discrimination actions. The employee had claimed that she had been discharged from her employment because she had filed a civil rights complaint against her employer. In an action involving sexual harassment, constructive discharge, and retaliation, the Michigan Court of Appeals recently reaffirmed its rule that an employee is not barred from all relief as a matter of law for after-acquired evidence of misconduct, but that any wrongdoing could be reflected in the nature of the relief awarded to him. *Horn v. Dep't of Corrections,* 216 Mich.App. 58, 548 N.W.2d 660 (1996). *See also Thompson v. Better–Bilt Aluminum Prods. Co.,* 187 Ariz. 121, 927 P.2d 781 (Ct.App.1996) (finding that public policy does not preclude, in action involving wrongful termination for filing of a workers' compensation claim, an employer from presenting after-acquired evidence of application fraud when the jury is instructed as to the significance of such evidence on the measure of damages); *Barlow v. Hester Industries, Inc.,* 198 W.Va. 118, 479 S.E.2d 628 (1996) (adopting the *McKennon* standard for employment discrimination cases).

Courts, however, have not been unanimous in their adoption of the *McKennon* approach. Some jurisdictions have held that after-acquired evidence can serve as a complete bar to employee claims. In *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540 (Colo.1997) (en banc), the Colorado

Supreme Court declined to apply the limitations placed on the after-acquired evidence doctrine by *McKennon* to claims for breach of implied contract and promissory estoppel. It held that after-acquired evidence of resume fraud may provide an employer with a complete defense to such claims. Similarly, in *Gassmann v. Evangelical Lutheran Good Samaritan Society, Inc.*, 261 Kan. 725, 933 P.2d 743 (1997), the court held that as to ordinary wrongful discharge breach of employment contract cases not involving any overriding governmental interest, the limits placed on the after-acquired evidence doctrine by *McKennon* are not applicable, and the employee is not entitled to any relief if the employer can establish after-acquired evidence sufficient for termination. *See also Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329 (1995) (finding employees' misrepresentations about their felony convictions related directly to their wrongful termination claims; since they were not lawfully qualified for their jobs, they cannot be heard to complain that they improperly lost them.).

## B. Application to Certified Questions

Analysis of the cases cited above reveals a clear distinction between those allowing after-acquired evidence on the issue of liability and those that have not. The cases that have allowed use of after-acquired evidence to bar recovery by the employee have involved causes of action, such as breaches of contract, which implicate purely private concerns. *See, e.g., Crawford Rehabilitation Servs., Inc.*, 938 P.2d 540 (breach of implied contract and promissory estoppel); *Gassmann*, 261 Kan. 725, 933 P.2d 743 (breach of employment contract). On the other hand, cases disallowing use of after-acquired evidence on the issue of liability have implicated major public policy concerns, such as prevention of discrimination or preservation of workers' compensation rights. *See, e.g., Trico Technologies Corp.*, 949 S.W.2d 308 (retaliatory discharge under workers' compensation act); *Walters*, 537 N.W.2d 708 (retaliatory discharge/discrimination actions); *Horn*, 216 Mich.App. 58, 548 N.W.2d 660 (sexual harassment, constructive discharge, and retaliation); *Thompson*, 187 Ariz. 121, 927 P.2d 781 (wrongful termination for filing workers' compensation claim); *Barlow*, 198 W.Va. 118, 479 S.E.2d 628 (employment discrimination).

The court in *Crawford Rehabilitation Services* observed that the employee's breach of implied contract and promissory estoppel claims did not implicate the *McKennon*-type public-policy interests of elimination of discrimination in the workplace. *See Crawford Rehabilitation Servs.*, 938 P.2d at 549. Similarly, the New Jersey Supreme Court has stated that "The policy concerns that are at stake in applying the after-acquired evidence defense to an unlawful discharge based on invidious discrimination differ from those that are implicated in private-employment-contract actions...." *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554, 563 (1994); *see also Schuessler v. Benchmark Marketing & Consulting*, 243 Neb. 425, 500 N.W.2d 529, 541 (1993) ("Breach of a contract does not give rise to the same concerns or demand the same protections as does an action based on discrimination."). We find this distinction persuasive.

■ *McKennon* disallowed the use of after-acquired evidence on the issue of liability in order to serve the public policy reasons underlying ADEA and Title VII, which include deterrence of discrimination and compensation for injuries caused by prohibited discrimination. We adopted the same approach in *Baber* in an action involving the Whistleblower's Act. *Baber*, 327 S.C. 31, 488 S.E.2d 314. An action brought under the Whistleblower's Act is a suit against a public employer by a public employee claiming to have been subject to adverse personnel action in retaliation for having exposed governmental wrongdoing. The Act is remedial and seeks to foster good government for the benefit of the people of South Carolina by affording protection to governmental employees, the most obvious and important sources of information on the conduct of government. *See Spencer v. Barnwell County Hosp.*, 314 S.C. 405, 444 S.E.2d 538 (Ct.App.1994). Clearly, a whistleblower's action implicates major public policy concerns. Such public policy concerns, however, are not so prominently present in employee-employer contract disputes, which simply involve the rights of private parties in relation to one another. Accordingly, we conclude that the rationales underlying *McKennon* and *Baber* are inapplicable in employment contract cases. As such, there should not be an absolute bar to the use of after-acquired evidence on the issue of liability in employee handbook breach of contract actions.

█ Although we find that after-acquired evidence should be admissible on the issue of liability, we recognize the potential dangers of allowing employers unrestricted use of such evidence. If free reign were given, then in defending breach of employment contract actions, less-than-principled employers (or their attorneys) may be tempted to "rummage the file" in order to "discover" any and all evidence that would permit them to escape liability. For example, an employer that has been inclined to overlook his employees' peccadillos (e.g. occasional tardiness), might suddenly claim, in response to a breach of contract action, that the employee would have been fired had the employer been aware of the tardiness. Thus, we conclude that although after-acquired evidence should be allowed on the issue of liability, certain limitations must be put into place so as to prevent abuse by employers. This can be achieved by restricting use of after-acquired evidence in two ways. First, the employer must prove that the wrongdoing was significant, that it was of "such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *See Baber*, 327 S.C. at 43, 488 S.E.2d at 320 (quoting *McKennon*). Thus, evidence of employee wrongdoing that would not have resulted in termination would not be admissible. Second, this proof must be established, not by a preponderance of the evidence, but by clear and convincing evidence. We believe that these two limitations will serve to exclude doubtful or insignificant evidence of employee wrongdoing, while allowing evidence of very severe wrongdoing that should properly be considered.

## CONCLUSION

Therefore, in response to the certified questions, we reply that South Carolina recognizes the after-acquired evidence doctrine as a defense to an action brought by an employee terminated in violation of the progressive discipline policy of an applicable employee handbook. Within this context, the evidence may serve to allow the employer to avoid liability altogether, if by clear and convincing evidence it is proven that the employee's wrongdoing was of such severity that the employee in fact would have been terminated on those

grounds alone if the employer had known of it at the time of the discharge.

CERTIFIED QUESTIONS ANSWERED.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.