Wayne A. **WALKER**, Plaintiff,

v.

**SAGA COMMUNICATIONS, INC.**, d/b/a Koam–TV and Saga Quad States Communications, Inc., Defendant.

No. 97–1170–JTM.

United States District Court,
D. Kansas.

June 12, 1998.

James A. Walker, Triplett, Woolf & Garretson, Wichita, KS, for Plaintiff.

Wyatt Wright, Foulston & Siefkin, L.L.P., Wichita, KS, John P. Hancock, Jr., Michael F. Smith, Detroit, MI, for Defendant.

## MEMORANDUM ORDER

MARTEN, District Judge.

Wayne Walker sued Saga Communications, Inc., alleging Saga breached an employment contract by terminating him without just cause. Saga moves for summary judgment, arguing (1) Walker falsified his resume and may not recover on a breach of employment contract claim under the after-acquired evidence rule; (2) Walker refused an offer of reinstatement and thus failed to mitigate his damages; and (3) just cause existed for Walker's termination. For the reasons that follow, the court finds that under Kansas law Walker's claim is barred by his resume fraud. It is not necessary to consider Saga's other grounds for summary judgment.

## I. Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the non-

moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). When determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies v. Harcourt Brace Publ., Inc.,* 63 F.3d 1540, 1545 (10th Cir. 1995), *cert. denied,* 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

## II.  Facts.

Saga owns KOAM–TV, the CBS affiliate television station in the Joplin, Missouri–Pittsburg, Kansas market. Danny Thomas is President/General Manager of KOAM, and has general authority for hiring and firing employees. In the summer of 1996, Thomas decided to terminate Malcolm Hukriede, the station's general sales manager. At some point, Thomas decided that Mark LaCrue, the local/regional sales manager, would be promoted to general sales manager. Thomas began looking for a replacement for the local/regional sales manager position.

Until May 31, 1996, Walker was president of Radio One, a company based in Lincoln, Nebraska, which owned 10 radio stations in the upper Great Plains. Radio One was purchased by Three Eagle Communications. One of the principals of Three Eagle was going to be CEO, and thus Walker was not offered a job after the sale. Walker was given a severance package and began a job search.

Thomas was given Walker's name by Larry Goldberg, a Saga employee working in Massachusetts. Thomas respected Goldberg's opinion. Thomas was aware that Walker was unemployed and called him at home. Walker was one of two candidates interviewed for the position of local sales manager or regional sales manager in July 1996. Both candidates took a personality assessment test. Walker scored substantially higher on the assessment.

On August 2, 1996, Thomas called Walker and offered him the job of local sales manager. Thomas faxed Walker a Deal Point Memo that same day. Walker was to start work on August 7, 1996. Walker called Thomas back and accepted the position.

Thomas testified that he conducted no investigation into Walker's background before making the offer. Thomas noted that Walker's explanation of his unemployment was consistent with the information Goldberg had previously provided.

On August 7, 1996, Walker began working at KOAM. He submitted an application for employment, incorporating his resume by reference. Walker worked for KKRD in Wichita from November 1984 until mid–1985. Walker failed to list his employment with KKRD on his resume. Walker's resume indicated he was working for Long–Pride Broadcasting during the relevant time period. Walker left KKRD because he was dating the estranged wife of a co-worker. Walker subsequently married the woman.

On August 12, 1996, Walker and Saga entered into a written employment agreement. As originally drafted by Saga, the agreement provided that Saga could terminate the agreement with or without cause. At Walker's insistence, the agreement was changed to provide that Saga could terminate Walker only for cause.

On March 4, 1997, LaCrue fired Walker, allegedly for failure to meet his local and regional sales budgets. In discovery, Saga learned that Walker had failed to list his employment with KKRD on his resume and had instead indicated he was working for Long–Pride during the relevant time period.

Saga cited evidence that it refused to rehire a former employee because the employee's new resume was inconsistent with his prior resume. Saga's employee manual indicates that an employee may be fired for falsifying company records, including the em-

ployment application. Thomas submitted an affidavit indicating he would not hire someone who committed resume fraud and would terminate an existing employee if such fraud was discovered.

Walker cited evidence indicating there were other, and the court will presume more important, reasons why Saga refused to rehire the former employee. Thomas admitted he does not conduct a thorough investigation of employees prior to hiring them.

### III. Analysis.

█ Kansas applies the after-acquired evidence doctrine to breach of employment contract cases where public policy concerns are not raised. *Gassmann v. Evangelical Lutheran Good Samaritan Society, Inc.*, 22 Kan.App.2d 632, 921 P.2d 224 (1996) (*Gassmann I*), *affirmed in part, reversed in part and remanded*, 261 Kan. 725, 933 P.2d 743 (1997) (*Gassmann II*). Under the doctrine, an employee is not entitled to damages for breach of an employment contract if public policy concerns are not implicated and the employer can show: (1) the employee is guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified discharge; and (3) if the employer had known of the misconduct, the employer would have discharged the employee. *Gassmann II*, 261 Kan. at 725, Syl. ¶ 2, 728, 933 P.2d 743 (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S.Ct. 879, 886–87, 130 L.Ed.2d 852 (1995)); *Gassmann I*, 22 Kan.App.2d at 644–645, 921 P.2d 224 (same).[1]

Gassmann was fired from her job in a nursing home for alleged inconsiderate treatment of residents. She alleged Good Samaritan had breached an implied employment contract and sought damages. During discovery Good Samaritan learned that Gassmann had taken a videotape of a company inservice meeting from her supervisor's office and made a copy of the tape before returning it the next day. Good Samaritan moved for summary judgment, arguing it would have

terminated Gassmann if it had known of her "theft" of the tape. Gassmann cited evidence indicating that (1) company policy required employees to watch videotapes of any inservice meetings they had not attended; (2) she had not attended the meeting in question; and (3) employees were permitted to take the tapes home for viewing as long as the tapes were promptly returned.

The district court granted Good Samaritan's motion for summary judgment. The Kansas Court of Appeals reversed and remanded for trial, holding that Gassmann had raised a material question of fact with regard to the first two prongs of the *McKennon* test. *Gassmann I*, 22 Kan.App.2d at 645–648, 921 P.2d 224. The Kansas Supreme Court agreed with the Court of Appeals, but held that Gassmann also had raised a material question of fact with regard to the third prong of the *McKennon* test. *Gassmann II*, 261 Kan. at 730–32, 933 P.2d 743.

There are no Kansas appellate cases directly addressing whether resume fraud acts as a complete bar to any recovery for breach of an employment contract. *Gassmann I* discusses resume fraud and indicates it may act as a bar to recovery, citing with apparent approval *Massey v. Trump's Castle Hotel & Casino*, 828 F.Supp. 314 (D.N.J.1993).

*Massey*, applying New Jersey law, held an employer could not be held liable for breach of an employment contract if the employee made a material misrepresentation and the employer relied on the misrepresentation in deciding to enter into the employment contract. 828 F.Supp. at 325. However, *Massey* found the employer had failed to demonstrate a material misrepresentation where the employment application asked for a ten-year employment history and the employee failed to list an earlier job. 828 F.Supp. at 327–28. *Massey* also found a material question of fact existed as to whether the plaintiff's answer that he left another job for personal reasons was misleading, when he had been discharged from the position. *Id.*

---

1. *McKennon* also held the after-acquired evidence doctrine did not serve as a complete bar to a plaintiff's claims where public policy concerns are raised by an employer's illegal conduct. The Kansas courts held the additional limits *McKennon* imposed on the use of the after-acquired evidence doctrine applied only where the employer's conduct raised public policy concerns. *Gassmann II*, 261 Kan. at 727–28, 933 P.2d 743; *Gassmann I*, 22 Kan.App.2d at 644, 921 P.2d 224.

*Massey* held a reasonable jury could conclude that the response provided sufficient notice to the employer that further investigation was advisable. *Id.*

Resume fraud cases from other jurisdictions generally involve public policy concerns, and, to a large extent are pre-*McKennon* decisions. However, the Colorado Supreme Court, relying extensively on *Gassmann I,* has addressed whether resume fraud acts as a complete bar to breach of employment contract claims:

> [We] hold that after-acquired evidence of resume fraud may provide an employer with a complete defense to such claims.
>
> We hasten to add that not every misrepresentation on an employment application will allow an employer to avoid liability for breach of contractual or equitable obligations. An employer can rely on after-acquired evidence of resume fraud as a complete defense only if it can prove that the employee's concealment undermined the very basis upon which he or she was hired. This requirement serves the purpose of preventing an employer from combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise impermissible discharge.
>
> To assert the defense of after-acquired evidence of resume fraud, an employer must prove that the employee's fraud was material and that a reasonable, objective employer would not have hired the employee if it had discovered the misrepresentation at the outset. The following factors are relevant to that determination. First, would a reasonable employer have regarded the misstated or omitted fact as important? The nature of the misrepresentation and the extent to which it relates to qualifications for the job may bear on this issue. Information about the employer's past conduct or policies may also bear upon this issue by focusing on what the

employer regarded as important in a non-adversarial context. The second factor is whether the employee concealed or misrepresented the fact or facts with the intent of creating a false impression in the mind of the employer.

*Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540, 549–50 (Colo.1997) (en banc) (citations omitted).

*Crawford* expressly declined to impose requirements that an employer show harm from the misrepresentation and actual reliance in the decision to hire the employee. "The employer need not prove that it called every reference, or that it checked on every credential. What it must prove is that a reasonable employer would have regarded the misstatement or omission as important to the hiring decision." *Id.,* 938 P.2d at 550 n. 14.

Walker does not dispute that he was guilty of some misconduct of which Saga was unaware, a false statement on his resume. Thus, Saga has satisfied the first prong of the test.[2] Walker essentially argues he has raised a material question of fact on whether the last two prongs of the *Gassmann* test can be met.

■ With regard to the second prong, Walker first argues his resume fraud would not have justified discharge because Saga did not rely on his resume in deciding to hire him. Indeed, Walker cites evidence from which it is reasonable to infer that his resume played no role whatsoever in the hiring decision.[3] *Massey* requires such a showing of reliance. Walker cites another case requiring a showing of reliance, *Johnson v. Honeywell Information Systems, Inc.,* 955 F.2d 409 (6th Cir.1992). Under *Massey* and *Johnson,* Walker has raised a material question of fact with regard to the second prong.

*Crawford* requires a showing that the misrepresentation was material, but does not require proof of reliance. Here, Walker

---

**2.** Walker claims that Saga failed to establish misconduct, but admitted his resume was inaccurate and does not explain how his falsification of his resume would not constitute misconduct. Walker's argument that his misrepresentations were not material is properly considered in the second prong of the *Gassmann* test.

**3.** In reply, Saga cites evidence indicating Walker gave Saga his resume before the decision was made to hire him. However, for summary judgment purposes all reasonable inferences must be drawn in Walker's favor.

omitted a job in the radio industry and falsely indicated on his resume that he was working elsewhere during the relevant time period. A reasonable, objective employer in the broadcast industry would consider this omission important. Walker notes that this was his first job in the industry, suggesting that an employer would not consider the job important because of Walker's later and more extensive experience in the industry. The fact that Walker not only omitted his employment at KKRD, but actively covered it up, suggests that a reasonable, objective employer in the broadcast industry would consider the omission important. Walker cites no evidence to the contrary.

Saga also argues Walker's omission was material because Walker was hired for a management position, where trust and confidence are more important. This is not a case where a job applicant failed to list all of the part-time jobs held during high school or college, or where an applicant merely did not list all of his previous employment. Here, Walker falsely stated he was working somewhere else in order to avoid disclosing his broadcasting-related employment at KKRD. Walker does not even argue that the omission and false statement were not deliberate. Under *Crawford*, Saga has established that the omission was material, both because the position Walker omitted was in the broadcast industry and because Walker was being hired for a management position.

This court must decide whether the Kansas Supreme Court would follow *Massey* and *Johnson* and require a showing of actual reliance in resume fraud cases, or would adopt the material omission test of *Crawford*. If the court were fashioning its own rule, it would follow *Massey* and *Johnson* and hold that summary judgment must be denied because Walker has raised a material question of fact as to whether Saga relied on his resume in deciding to hire him. However, the court must decide this case based on how it believes the Kansas Supreme Court would interpret Kansas law.

The language of the *Gassmann* cases suggests that Kansas would not require a showing of actual reliance. The three-prong *Gassmann* test does not include a requirement of reliance on the misconduct, or even some sort of detrimental impact on the em-

ployer as a result of the misconduct. *Crawford*'s requirement that an omission be material is sufficient to prevent an employer from relying on a minor or trivial omission to escape liability for breach of an employment contract.

*Johnson, supra*, upon which Walker relies, applied Michigan law and determined that Michigan would impose a reliance requirement. 955 F.2d at 414. It found the reliance requirement was met where the employee misstated her educational background on her resume and the employment advertisement to which she responded listed minimal education requirements. *Id. Johnson* cites *Churchman v. Pinkerton's, Inc.*, 756 F.Supp. 515, 520 (D.Kan.1991). *Churchman*, relied on *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991, 994–95 (D.Kan.1989). *Churchman* and *Mathis* indicate that where an employer shows reliance upon an employee's misrepresentation, the misrepresentation is material. They do not hold that actual reliance is a necessary element of the after-acquired evidence defense, or of showing that a misrepresentation was material. Furthermore, *Churchman* and *Mathis* were decided before *Gassmann I* and *Gassmann II*, the first occasion where Kansas Appellate Courts addressed the after-acquired evidence doctrine. As discussed above, there is no indication that actual reliance is required in the three-part test outlined in the *Gassmann* cases.

This court is convinced that the Kansas Supreme Court would follow *Crawford*, and, however reluctantly, must apply *Crawford* to this case. Whether Walker can raise a material question of fact on actual reliance does not preclude summary judgment based on the after-acquired evidence doctrine.

Walker next argues his resume fraud was not material because the circumstances of his leaving KKRD would not justify a refusal to hire him. This is just a restatement of Walker's reliance argument. The question is whether a reasonable, objective employer would have considered the omission of the previous employment material, not whether the employee would have been hired had full disclosure occurred.

Under *Crawford,* Walker has failed to raise a material question of fact on whether his misrepresentation was material, and therefore on whether or not the misrepresentation would have justified a refusal to hire or a discharge upon discovery. Saga has met the second prong of the *Gassmann* test.

■ With regard to the third prong of the *Gassmann* test, Walker argues his resume fraud, if discovered, would not have resulted in his discharge because Saga has failed to show it would discharge an employee for resume fraud.

*Gassmann I* suggested that where an employer demonstrates that it has a policy of terminating employees for certain rule violations and submits affidavits that the rules are enforced, the third prong of the test is met. *Gassmann I,* 22 Kan.App.2d at 645, 921 P.2d 224.

*Gassmann II* reversed *Gassmann I's* holding that the third prong had been satisfied in that case. However, the Kansas Supreme Court was concerned with whether "theft" as used in the employee manual and the affidavit covered the type of conduct that the employee was accused of committing. *Gassmann II,* 261 Kan. at 730–31, 933 P.2d 743. Here, there is no dispute that Walker falsified his resume. *Gassmann II* suggests that a stated policy of discharge for certain misconduct, together with an affidavit indicating that employees engaging in such conduct would be discharged, is sufficient to establish the third prong, as long as there are no material questions of fact as to the first two prongs or evidence contradicting the affidavits stating that the policy is enforced. *Id.*

Saga has cited a policy indicating that employees may be discharged for falsifying employment applications and submitted an affidavit attesting that it will not hire applicants who falsify their resumes and will discharge employees who are discovered to have falsified their resumes. Walker first argues that the policy manual uses the phrase "may be discharged" as opposed to the words "shall" or "will," and is therefore a discretionary policy. The court finds this distinction unpersuasive where the falsification at issue here was found to be material. *See Gassmann II,* 261 Kan. at 630 (suggesting

third prong must be evaluated in light of the resolution of the first two prongs).

Walker next argues that the affidavit is not specific enough. This is simply a mischaracterization of the record. The affidavit explicitly refers to the conduct at issue here—resume falsification.

Both parties cite evidence related to Saga's decision not to rehire another former employee. *Crawford* recognized that information about an employer's past policies and conduct is relevant to a determination of whether the employer would not hire an applicant, or would fire an employee, if it discovered resume fraud. *Crawford* 938 P.2d at 549–50. As Saga notes, *Crawford* does not hold that an employer must present evidence of prior incidents in order to meet the third prong of the *Gassmann* test.

Nevertheless, Saga argues the incident supports its position because it declined to rehire the former employee after discovering his resume fraud. Walker cited evidence that Thomas was more concerned about other factors when he decided not to rehire the former employee. Even if the court presumes that Thomas's decision was based primarily on other factors, this is not evidence that Thomas would not have enforced the policy in the absence of his other concerns.

Walker argues that Thomas's failure to conduct thorough background checks of potential employees is evidence that Saga did not view resume fraud as a serious offense. The court does not agree that the failure of an employer to assume that potential employees are lying is sufficient to raise a question of fact on whether the employer would hire a potential employee it knew had lied on his employment application.

The employment policy manual and Thomas's affidavit are sufficient to establish the third prong of the after-acquired evidence doctrine. Walker has failed to raise a material question of fact on whether Saga would have refused to hire him, or would have terminated his employment upon discovering his resume fraud. Saga has established that it is entitled to summary judgment based on the after-acquired evidence doctrine.

IT IS ACCORDINGLY ORDERED this 12th day of June, 1998, that defendant's motion for summary judgment is granted. Walker has a pending motion to strike certain evidentiary materials submitted by Saga. The court did not consider these materials. Accordingly, Walker's motion to strike is denied as moot.