(998 P.2d 114)
No. 82,293

HELEN M. RIDDLE, *Appellant,* v. WAL-MART STORES, INC.,
and PATRICIA PARADISE, *Appellees.*

Opinion filed
February 18, 2000.

*Paul D. Post,* of Topeka, for appellant.

*Alan L. Rupe* and *Dwight D. Fischer*, of Husch & Eppenberger LLC, of Wichita, for appellee.

Before JUSTICE LOCKETT, presiding, MICHAEL F. POWERS, District Judge, assigned, and ROBERT G. JONES, District Judge Retired, assigned.

LOCKETT, J.: Plaintiff/employee appeals the district court's grant of summary judgment in favor of the defendant/employer after the court's finding that the doctrine of after-acquired evidence was a complete defense to the employee's claim of wrongful discharge and, as a matter of law, that the employer was entitled to judgment on the employee's defamation claim.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

First, we note that in granting summary judgment, the district judge erroneously weighed material conflicting evidence. The evidence most favorable to the party against whom the ruling was sought includes evidence that Helen Riddle worked for 4 years for defendant Wal-Mart, Inc., (Wal-Mart) in Topeka, Kansas. On April 6, 1996, Riddle was injured in the course of her employment. The injury required time off from work, surgery, and accommodations. When Riddle was released by her treating physician, permanent restrictions precluded her from performing her former work. Wal-Mart accommodated her restrictions by assigning her to a greeter position. Approximately 1 week after returning to work as a greeter, Riddle's employment with Wal-Mart was terminated due to allegations of theft.

The theft allegations arose when Riddle purchased plants from Wal-Mart. While working as a greeter, Riddle had assisted a customer who purchased plants at 25 cents each. Riddle inquired of the cashier as to the cost of the plants. The cashier informed Riddle

that Wal-Mart was selling the plants for 25 cents each. Later that morning, Riddle went to the garden center and purchased six plants identical to those the customer had purchased. Riddle paid 25 cents for each plant and took them to her car.

The following day, Riddle was called into the office of Patricia Paradise, an assistant store manager. Paradise asserted that Riddle had stolen the plants and terminated Riddle's employment.

Riddle filed suit against Wal-Mart and Paradise for wrongful discharge, alleging retaliatory discharge because she had made a workers compensation claim, and defamation of character. During discovery, Wal-Mart found that Riddle had made false statements on her employment application as to her employment history. Riddle had failed to inform Wal-Mart when she was employed that she had been fired by a former employer for gross misconduct.

After discovery was complete, Wal-Mart moved for summary judgment, claiming that if it had known of Riddle's misrepresentations on her employment application, it would have discharged her prior to terminating her for theft and that Riddle had failed to establish that her reputation was actually harmed by its false statement. The district court granted Wal-Mart's motion for summary judgment, finding that the after-discovered evidence of resume misrepresentations was a complete defense to Riddle's wrongful discharge claim and that Riddle had failed to provide evidence of actual harm caused by the employer's defamation. Riddle appealed, claiming that the after-acquired evidence doctrine does not apply where public policy concerns are involved and that the district judge improperly granted summary judgment as to her defamation claim.

## Development of the After-Acquired Evidence Doctrine

*Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988), provides a starting point for consideration of the after-acquired evidence doctrine. In *Summers*, an employee began working for State Farm in 1963. From 1963 to July 1980 his work record was satisfactory. In 1981, it was discovered that in 1977 Summers had falsified a record. Summers did not dispute the falsification and was warned by his employer that another falsification

could result in dismissal. State Farm reviewed other files that Summers had handled and concluded that seven or eight of these files were "suspicious." Summers was again confronted and admitted he had falsified other records. Summers was placed on probation. On May 19, 1982, Summers was discharged by State Farm because of poor attitude and inability to get along with fellow employees and customers.

Summers brought an action against State Farm for discrimination on the basis of age and religion. During discovery, State Farm found evidence of 150 additional instances where the employee had falsified records. State Farm's after-acquired evidence was admitted and considered. Based on the after-acquired evidence the judge granted the employer's motion for summary judgment. On appeal, the Tenth Circuit held that the after-acquired evidence could be admitted to bar relief for the employee. In reaching its conclusion, the *Summers* Court made the following analogy:

"The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor.' In our view, the masquerading doctor would be entitled to no relief . . . ." 864 F.2d at 708.

In *Wallace v. Dunn Const. Co., Inc.*, 968 F.2d 1174 (11th Cir. 1992), the Eleventh Circuit rejected the *Summers* rule that after-acquired evidence may effectively provide an affirmative defense to Title VII liability. *Wallace*, 968 F.2d at 1181. The *Wallace* court declared that the *Summers* rule was " 'antithetical to the principal purpose of Title VII—to achieve equality of employment opportunity by giving employers incentives to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible, employment discrimination.' " *Lewis v. Fisher Service Co.*, 329 S.C. 78, 82, 495 S.E.2d 440 (1998) (quoting *Wallace*, 968 F.2d at 1180). However, the *Wallace* court held that after-acquired evidence is allowed in determining the amount of damages.

In 1995, the split between the federal circuits was resolved by the United States Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 130 L. Ed. 2d 852, 115 S. Ct.

879 (1995). *McKennon* involved an action brought by a 62-year-old discharged 30-year employee against her employer under the Age Discrimination in Employment Act of 1967 (ADEA). The ADEA makes it unlawful to discharge any employee or otherwise discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because of the employee's age. 29 U.S.C. § 623(a)(1) (1994).

The employer claimed the employee was discharged as part of a work force reduction plan necessitated by cost considerations. During discovery, the employer learned that the employee had copied several confidential documents while working as a secretary. When confronted, the employee stated she had copied the documents as insurance and protection. The employer notified the former employee that had it known of her misconduct, it would have discharged her at once for that reason.

For purposes of summary judgment, the employer conceded it discriminated against the employee. The federal district court granted summary judgment to the employer, finding that the employee's misconduct was grounds for her termination and that neither back pay nor any other remedy was available to her under the ADEA. The United States Court of Appeals for the Sixth Circuit affirmed on the same rationale. The United States Supreme Court granted the employee's request for certiorari.

The Supreme Court noted that the ADEA and Title VII share common substantive features and also a common purpose, *i.e.*, the elimination of discrimination in the work place. After noting that deterring discrimination and compensating for injuries caused by prohibited discrimination are two shared objectives of these statutes, the *McKennon* Court stated:

"It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act.

"The objectives of the ADEA are furthered when even a single employee establishes that an employer has discriminated against him or her. The disclosure through litigation of incidents or practices that violate national policies respecting nondiscrimination in the work force is itself important, for the occurrence of violations may disclose patterns of noncompliance resulting from a misappreciation of the Act's operation or entrenched resistance to its commands, either of

which can be of industry-wide significance. The efficacy of its enforcement mechanisms becomes one measure of the success of the Act." *McKennon*, 513 U.S. at 358-59.

The Supreme Court unanimously reversed the lower court's use of after-acquired evidence as a complete bar to recovery in wrongful termination cases when the employee establishes that age discrimination was the reason for termination.

Although *McKennon* rejected the use of after-acquired evidence on the issue of liability in age discrimination cases, it did consider the evidence relevant in determining the remedy to be ordered, stating: "The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored." *McKennon*, 513 U.S. at 361. The Supreme Court set the following threshold standard for admitting after-acquired evidence on the issue of damages: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63. The beginning point in the formulation of a remedy in such a case is the calculation of back pay from the date of the unlawful discharge to the date the employee's wrongful conduct was discovered. 513 U.S. at 362.

In *Gassmann v. Evangelical Lutheran Good Samaritan Society, Inc.*, 261 Kan. 725, 933 P.2d 743 (1997), a breach of implied employment contract case, the Kansas Supreme Court adopted the after-acquired evidence doctrine. The plaintiff in that case, Peggy Gassmann, was terminated from her employment by Good Samaritan based upon allegations of inconsiderate treatment of nursing home residents. Gassmann filed a wrongful discharge lawsuit based on Good Samaritan's violation of an implied employment contract, seeking back pay and reinstatement.

During a discovery deposition, Gassmann admitted that while she was still employed at Good Samaritan, she entered the office of the director of nursing without authorization and took a videotape of a company in-service meeting. She copied the videotape and then returned it to the office the next morning. Gassman's

reason for the taking of the tape was to acquire evidence against the facility director, who she alleged had acted inappropriately at the in-service meeting. Good Samaritan moved for summary judgment based on the after-acquired evidence of Gassman's unauthorized taking of the videotape. The district court applied the after-acquired evidence doctrine and granted summary judgment to Good Samaritan. Gassman appealed.

The Court of Appeals found that because the case lacked the public policy considerations of an antidiscrimination case, the limits placed on the after-acquired evidence doctrine disseminated in *McKennon* were not applicable. It then observed that Gassman would not be entitled to any relief if the employer could establish that the after-acquired evidence was sufficient for termination of the employee. *Gassman v. Evangelical Lutheran Good Samaritan Society, Inc.*, 22 Kan. App. 2d 632, 644, 921 P.2d 224 (1996).

The Court of Appeals applied the *McKennon* three-prong test for the defense of after-acquired evidence: "An employer must satisfy the following conditions: (1) The plaintiff was guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified discharge; and (3) if the employer had known of the misconduct, the employer would have discharged the plaintiff." 22 Kan. App. 2d at 644-45. The Court of Appeals determined that the employer had satisfied the third prong, but reversed as to the first two prongs, finding there were unresolved issues of material fact, and remanded the action to the district court.

The Kansas Supreme Court granted Good Samaritan's petition for review on the questions of whether the after-acquired evidence doctrine is a complete defense to liability in a wrongful discharge case and whether genuine issues of material fact existed concerning whether Gassmann's action was misconduct justifying discharge. After observing the public policy exception to the after-acquired evidence rules, the *Gassmann* court stated that an employee who has not raised a public policy concern is not entitled to relief if the employer establishes proof of after-acquired evidence sufficient for termination. 261 Kan. at 730.

The *Gassman* court applied the three-prong test of *McKennon* to the facts of the case and held that issues of material fact re-

mained as to all three *McKennon* prongs, and the matter was remanded to the district court.

## Application of the After-Acquired Evidence
## to Retaliatory Discharge Claims

Here, the issue is whether the after-acquired evidence doctrine is applicable to a retaliatory discharge case where the plaintiff alleges that he or she was discharged from employment for making a workers compensation claim. Wal-Mart acknowledges that the *McKennon* Court refused to apply the after-acquired evidence doctrine as a complete bar to recovery in that case because the public policy of federal discrimination legislation would be frustrated by application of the doctrine. Wal-Mart contends, however, that the facts of this case do not raise antidiscrimination public policy concerns recognized and protected by the *McKennon* Court.

## Recognized Public Policy Considerations

Kansas employment law is grounded in the doctrine of employment-at-will. In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party. *Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1046 (D. Kan. 1998). Recognized public policy concerns which contravene the employment-at-will rule are few and narrowly defined. Before courts are justified in declaring the existence of public policy, " 'it should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.' " *Palmer v. Brown*, 242 Kan. 893, 897, 752 P.2d 685 (1988).

The two public policy exceptions to the employment-at-will doctrine that Kansas courts have recognized are (1) when an employer discharges an employee for exercising rights under the workers compensation laws and (2) when an employer discharges an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety, and the general welfare by a co-worker or employer (whistleblowing). *Frye*, 15 F. Supp. 2d at 1046. In recognizing the tort of re-

taliatory discharge in a case where the employee was demoted for making a workers compensation claim, this court stated:

" 'We believe [plaintiff's] public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act.' [Citation omitted.]" *Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 19, 935 P.2d 1054 (1997).

Clearly, the public policy of preserving workers compensation rights is highly regarded in Kansas law.

A number of jurisdictions have balanced state public policy concerns and employers' lawful prerogatives in hiring, promoting, and discharging their employees by applying the *McKennon* standard in state retaliatory discharge cases, thereby limiting the application of the after-acquired evidence doctrine to the issue of damages. See *Walters v. U.S. Gypsum Co.*, 537 N.W.2d 708 (Iowa 1995); *Horn v. Dep't of Corrections*, 216 Mich. App. 58, 548 N.W.2d 660 (1996); *Trico Technologies Corp. v. Montiel*, 949 S.W.2d 308 (Tex. 1997); see also *Thompson v. Better-Bilt Aluminum Prods. Co.*, 187 Ariz. 121, 927 P.2d 781(1996) (finding that public policy does not preclude, in an action involving wrongful termination for filing of a workers compensation claim, an employer from presenting after-acquired evidence of application fraud when the jury is instructed as to the significance of such evidence on the measure of damages); *Barlow v. Hester Industries, Inc.*, 198 W. Va. 118, 479 S.E.2d 628 (1996).

As other jurisdictions have found, we find that there is a significant distinction between breach of contract suits such as *Gassmann* and suits based on discrimination, including discrimination for having exercised workers compensation rights. Therefore, the after-acquired evidence doctrine is not a complete bar to recovery in retaliatory discharge claims but is, nevertheless, relevant to the issue of damages if the employer can show the following conditions: (1) The plaintiff was guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified dis-

charge; and (3) if the employer had known of the misconduct, the employer would have discharged the plaintiff. See *Gassmann*, 261 Kan. at 728.

*McKennon* concluded that as a general rule in employment discrimination cases where after-acquired evidence mitigates the employer's liability, neither reinstatement nor front pay is an appropriate remedy. "It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *McKennon*, 513 U.S. at 362. Recognizing that the object of compensation is to restore the employee to the position he or she would have been in absent the discrimination, the *McKennon* Court concluded that in federal discrimination cases where the employer asserts after-acquired evidence, the beginning point in the trial court's formulation of a remedy should be calculation of back pay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate order for relief, the court can take into further account extraordinary equitable circumstances that affect the legitimate interests of either party. 513 U.S. at 362.

Here, the district court granted summary judgment to Wal-Mart based on after-acquired evidence of resume misinformation as to her termination by a former employer for "gross misconduct."

The issue of whether Wal-Mart's termination of Riddle was pretextual has yet to be determined. Therefore, the trial court's grant of summary judgment to Wal-Mart was error. If the trier of fact finds for Riddle on the issue of liability, it should consider the effect of the after-acquired evidence of Riddle's resume misinformation in determining Riddle's damages. Wal-Mart may present evidence to establish that Riddle had been terminated for gross misconduct by a former employer. If the trier of fact concludes that Wal-Mart was unaware of the misstatement on Riddle's employment application and the misstatement justified Riddle's discharge, and if the trier of fact further finds proof of wrongful discharge, the trier of fact will then calculate Riddle's damages from the date of her wrongful discharge to the date the misstatement was discovered. See *McKennon*, 513 U.S. at 362.

## DEFAMATION CLAIM

Riddle also argues that the district judge erred in granting summary judgment to Wal-Mart on her defamation claim. The standard for this court's review of a summary judgment order has been previously stated.

The tort of defamation includes both libel and slander. The elements of the wrong include false and defamatory words communicated to a third person which result in harm to the reputation of the person defamed. *Dominguez v. Davidson*, 266 Kan. 926, 930, 974 P.2d 112 (1999).

Riddle presented evidence from which, drawing all inferences in favor of Riddle, a jury could find that Wal-Mart and Paradise communicated false and defamatory words to a third person. The defendants argue, however, that Riddle failed to establish that her reputation was actually harmed by the false statement, an element of proof necessary to sustain her claim. Because the district judge improperly granted summary judgment as to the first issue, the judge's grant of summary judgment as to Riddle's defamation claim was premature. The matter is remanded to the district court for further proceedings.

Reversed and remanded.