**Larry D. HYSTEN, Plaintiff,**

v.

**BURLINGTON NORTHERN SANTE FE RAILWAY COMPANY, Defendant.**

**Civil Action No. 01–2296–KHV.**

United States District Court, D. Kansas.

March 26, 2002.

Alan V. Johnson, Stephen D. Lanterman, Sloan, Listorm, Eisenbarth, Sloan & Glassman, Topeka, KS, for Larry D. Hysten.

David M. Cooper, City of Lenexa Legal Dept., Lenexa, KS, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Burlington Northern and Santa Fe Ry. Co.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Larry D. Hysten brings suit against his employer, the Burlington Northern Sante Fe Railway Company ("Burlington Northern"), alleging that it terminated his employment for filing a claim under the Federal Employer's Liability Act ("FELA"). This matter is before the Court on defendant's Motion To Dismiss (Doc. # 15) filed October 12, 2001. For the reasons stated below, defendant's motion is sustained.

### Factual Background

Plaintiff's second amended complaint alleges the following facts, which the Court accepts as true for the purposes of this motion:

Plaintiff began working for Burlington Northern in August of 1977. As of April 6, 1999, plaintiff was working at the Topeka shop facility, repairing and maintaining air brakes on freight cars. When plaintiff awoke on April 7, 1999, he experienced sharp pains in his lower back. Plaintiff told Burlington Northern that because of pain, he could not work from April 7 through April 9. He said that he did not know the exact nature or cause of his injury, however, and that he could not identify his injury as work-related.

On April 8, 1999, plaintiff saw Dr. Desai at St. Francis Medical Center. At this visit, Dr. Desai placed plaintiff on limited duty. On April 12, 1999, plaintiff sought treatment for his injury at the Tennant Chiropractic Clinic, P.A. The treating physician at the Clinic requested that plaintiff be excused from work for two days. When plaintiff delivered the doctor's note to Burlington Northern, he told Pamela Morris, a fellow employee, that he did not know exactly what had caused his injury. Following his injury, Burlington Northern began to pressure plaintiff to state whether his injury was work-related. Plaintiff could not comply with this demand, however, because he could not determine the exact nature of his injury and whether it was work-related.

Burlington Northern supervisors filled out a personal injury report sheet regarding plaintiff's injury. Plaintiff later filled out a Burlington Northern accident analysis form that required him to determine exactly how he was injured on the job. Although plaintiff was uncertain as to the exact nature and cause of his injury, he noted that the injury could have been sustained either while he was putting on an air hose or an air test device. Plaintiff continued to seek medical attention and Burlington Northern gave him a leave of absence until his next scheduled medical appointment on April 21, 1999.

On May 3, 1999, Burlington Northern allowed plaintiff to return to work. Even though plaintiff was still unaware whether his injury was work-related, Burlington Northern medical personnel placed plaintiff in the Transitional Work Program ("TWP") from May 3, 1999 to May 14, 1999. The TWP is a program designed to accommodate employees who do not have work-related injuries.

On May 15, 1999, Dr. Kenneth Gimple released plaintiff to return to full duty to work. At the time, plaintiff was still under medication for his back pain. During a meeting on May 18, 1999, Burlington Northern personnel told plaintiff that he had to declare whether his injury was work-related. Plaintiff did not have union representation at this meeting and, under pressure and to protect himself from Burlington Northern and protect his ability to receive FELA compensation, plaintiff felt that he had no option but to declare that the injury was work-related.

On May 21, 1999, Burlington Northern told plaintiff that it was going to conduct a disciplinary hearing on May 28, 1999 to investigate allegations that he had violated its rules and regulations by failing to promptly report a work-related injury, withholding information and failing to comply with a supervisor's instructions. On May 27, 1999, plaintiff learned that his disciplinary hearing had been moved to June 1, 1999. On June 1, 1999, plaintiff spoke with John Suminski, a Burlington Northern claims manager, about filing a FELA claim for what he now considered to be a work-related injury. The disciplinary hearing scheduled for that date was apparently moved. On June 9, 1999, it was moved for a third time-to June 14, 1999. Plaintiff could not attend the hearing on that date but Burlington Northern

went ahead and held the hearing. Monte Johnson, Burlington Northern's superintendent for the Topeka System Maintenance Terminal, conducted the meeting and determined that plaintiff should be terminated for violating defendant's rules about the reporting of work-related injuries. After the meeting, plaintiff attempted to contact Johnson, but Johnson refused to listen to plaintiff's explanation. On July 12, 1999, based on Johnson's recommendation after the June 14 disciplinary hearing, plaintiff was terminated.

On January 3, 2000, plaintiff filed suit against Burlington Northern and Johnson, alleging that he had suffered civil rights violations and that defendants had wrongfully discharged him in violation of Kansas law. The Honorable G. Thomas VanBebber granted summary judgment for defendants on plaintiff's federal claims and declined to exercise supplemental jurisdiction over his state law claims. See Hysten v. Burlington Northern And Sante Fe Railroad Co. et. al., No. 00–2002–GTV, 2000 WL 1871889 (D.Kan. Dec.6, 2000).

In April 2000, Burlington Northern's Public Hearing Board reviewed plaintiff's case and reinstated his employment. Plaintiff alleges that this decision did not make him whole, however, because he did not receive punitive damages or damages for emotional distress and mental anguish.

Plaintiff brings a one-count complaint against Burlington Northern, alleging that it retaliated against him for filing a FELA claim. Burlington Northern contends that plaintiff's claims should be dismissed because (1) the Railway Labor Act ("RLA"), 45 U.S.C. § 151, preempts his claim and (2) he has not alleged facts necessary to sustain a claim for FELA retaliation.

### Motion To Dismiss Standards

■ A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Assoc. Wholesale Grocers., Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). The issue in reviewing the sufficiency of plaintiff's complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although plaintiff need not precisely state each element of his claims, plaintiff must plead minimal factual allegations on those material elements that must be proved. See *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### Analysis

### I. Preemption

Defendant argues that the RLA preempts plaintiff's claim of retaliation for exercising FELA rights because any analysis of its duty to plaintiff requires an interpretation of the collective bargaining agreement ("CBA") which defines the extent of its duties to union employees. Plaintiff responds that the rights at issue are not derived from the CBA and that the RLA does not preempt his claim.

■ In *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), the United States Supreme Court noted that the RLA created the National Railroad Adjustment Board ("NRAB") to serve as the exclusive mechanism for resolving "minor" disputes, i.e. disputes which are grounded in CBAs between railroads and their employees. See *Hawaiian Airlines Inc. v. Norris,* 512 U.S. 246, 256, 114 S.Ct. 2239, 129 L.Ed.2d

203 (1994); *Fry v. Airline Pilots Ass'n Int'l,* 88 F.3d 831, 835 (10th Cir.1996). The RLA will preempt an employee's state law claim of wrongful termination if the CBA is the only source of the employee's claim. See *Hawaiian Airlines Inc.,* 512 U.S. at 257–58, 114 S.Ct. 2239. In Hawaiian Airlines, defendant had a state law obligation (aside from any rights contained in the CBA) to refrain from discharging plaintiff for whistleblowing. *Id.* at 258, 114 S.Ct. 2239. Defendant argued that to determine whether plaintiff was discharged for just cause, the Court had to interpret the meaning of "just cause" under the CBA and the RLA therefore preempted plaintiff's state law claim. The United States Supreme Court disagreed, *id.* at 266, 114 S.Ct. 2239, stating that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 261 n. 8, 114 S.Ct. 2239 (citations omitted).

Defendant relies on *Garley v. Sandia Corp.,* 236 F.3d 1200 (10th Cir.2001), for the proposition that the need to determine whether plaintiff was discharged for just cause under a CBA is sufficient cause to preempt any state law claims. In Garley, plaintiff alleged that his supervisor falsely accused him of time card fraud and initiated an investigation which subsequently lead to his discharge. *Id.* at 1203–04. The dispute arose because plaintiff was entitled to paid absence from work to fulfill his duties as a union steward. *Id.* at 1203. Through the union grievance proceedings and binding arbitration, defendant agreed to reinstate plaintiff with full back pay, benefits and unbroken seniority. *Id.* at 1204. Later, however, defendant denied plaintiff his previous security clearance— without which opportunities for advancement were nil—and refused to honor its agreement with regard to back pay, retire-ment funds and reinstatement to plaintiff's previous work station. *Id.* at 1205. The district court held that because the issue whether defendant acted properly required it to analyze CBA provisions dealing with the treatment of employees on union business, the RLA preempted plaintiff's state law claims for civil conspiracy, defamation, breach of implied contract and intentional infliction of emotional distress. *Id.* at 1206. The district court held that the RLA preempted plaintiff's claims for retaliation and breach of the duty of good faith and fair dealing because these claims required a determination whether reinstatement, as defined by the CBA, included reinstatement to the same work station with the same security clearance. *Id.*

On appeal, the Tenth Circuit affirmed the district court's preemption holding as to plaintiff's claims of defamation, breach of implied contract, and breach of the duty of good faith and fair dealing. It held that plaintiff's civil conspiracy claim was not preempted, however, even though it would involve many of the same factual inquiries as plaintiff's discharge under the CBA. *Id.* at 1212. The Tenth Circuit found that the focus of plaintiff's conspiracy claim was on defendant's alleged conspiracy against plaintiff, which was analytically distinct from the question whether the CBA authorized defendant's actions. *Id.* The Tenth Circuit also held that plaintiff's claim for intentional infliction of emotional distress was preempted—at least to the extent that it was based on conduct which led to plaintiff's termination. To the extent that plaintiff's claim was based on retaliation after the arbitration, the Tenth Circuit held that the RLA did not preempt plaintiff's claim. Furthermore, the Tenth Circuit noted that plaintiff's retaliation claim—that defendant withheld back pay and retirement funds, reassigned him to a different work station and took away his security clearance in retaliation for filing a

grievance—did not require the court to consider plaintiff's rights and obligations under the CBA. It therefore held that the RLA did not preempt plaintiff's retaliation claim. *Id.* at 1213. In that regard, it stated

> As we explained in *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419, 1427 (10th Cir.1993), in holding that a retaliatory discharge claim was not preempted, "[s]o long as the state law cause of action is concerned not with the employer's contractual rights to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply." The Supreme Court itself recognized in Lingle that litigating a state law retaliatory discharge claim presents purely factual questions pertaining to the "conduct of the employee and the conduct and motivation of the employer," and that neither required "a court to interpret any term of a collective-bargaining agreement." *Lingle[ v. Norge Div. of Magic Chef]*, 486 U.S. [399] at 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 [1988].... Consequently, "[e]ven if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." *Davies v. American Airlines, Inc.*, 971 F.2d 463, 466 (10th Cir.1992) (citations omitted).

*Id.*

■ In this matter, plaintiff does not argue that defendant violated his rights under the CBA or that defendant failed to perform its obligations under the CBA. Plaintiff and defendant complied with the grievance procedure delineated in the CBA and plaintiff was ultimately reinstated to his position. Plaintiff merely argues that under Kansas law he is entitled to additional remedies.

This case implicates the CBA only to the limited extent that defendant may have been entitled to terminate plaintiff's employment under the CBA. Hawaiian Airlines, Inc. and Garley, however, both teach that RLA preemption does not arise in these circumstances. See *Marshall v. TRW, Inc., Reda Pump Div.*, 900 F.2d 1517, 1521 (10th Cir.1990) (basic issue is whether discharge was retaliatory; no need to interpret CBA).

## II. Failure To State A Claim Under Kansas Law

Defendant next argues that plaintiff cannot maintain a state law retaliation claim because (1) Kansas law does not recognize his claim as a public policy tort and (2) plaintiff has an adequate alternative remedy under the RLA. Plaintiff responds that under *Flenker v. Willamette Indus., Inc.*, 266 Kan. 198, 967 P.2d 295 (1998), Kansas public policy may protect the exercise of rights under a federal statutory scheme where the federal statutory scheme does not provide an "adequate alternative remedy," id. at 210, 967 P.2d at 303, and that his remedy under the RLA is inadequate because he did not receive damages for emotional distress and mental anguish.

■ Kansas applies the common law doctrine of employment at will. See *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 508, 738 P.2d 841, 846 (1987). Unless the parties have an express or implied contract, an employer can end the employment relationship "for good cause, for no cause, or even for a wrong cause." See *Wiggins v. Housing Auth.*, 22 Kan.App.2d 367, 370, 916 P.2d 718, 721 (1996). The only exceptions to the rule of at-will employment are based on public policy. See *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176, 872 P.2d 252, 261 (1994).

An employer may not discharge an employee for reasons which contravene public policy. See *Scott v. Topeka Performing Arts Ctr., Inc.*, 69 F.Supp.2d 1325, 1327–28 (D.Kan.1999). The public policy exception does not apply if plaintiff has other remedies available, however, so long as they will adequately protect plaintiff's rights. See *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 813–815, 752 P.2d 645, 651–52 (1988) (collective bargaining agreement not adequate to uphold public policy against retaliatory discharge). In *Flenker*, 266 Kan. at 198, 967 P.2d at 295, the Kansas Supreme Court emphasized that although Coleman arose in the collective bargaining context, its ruling extends to statutory schemes such as the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. (1994). The Kansas Supreme Court also approvingly stated that "Coleman, while never specifically saying so, assumes that an adequate alternative remedy would preclude a common-law cause of action for retaliatory discharge." *Id.* at 209, 967 P.2d at 303. Preclusion of common law relief is appropriate when the statute's remedy is adequate to further the goals of state public policy. See *id.* 266 Kan. at 207–208, 967 P.2d at 301. Plaintiff cannot complain that a remedy is inadequate merely because "one could conceive of a remedy offering more comprehensive relief." *Polson v. Davis*, 635 F.Supp. 1130,

1150 (D.Kan.1986), *aff'd.*, 895 F.2d 705 (10th Cir.1990).

Defendant argues that Kansas courts have not recognized retaliation claims based on an exercise of FELA rights and that arbitration under the RLA provides an adequate federal remedy. Defendant therefore reasons that under Kansas law, a retaliatory discharge action cannot be based on a FELA claim and plaintiff does not state a claim under Kansas law.

■ In discussing the alleged inadequacy of his statutory remedy, plaintiff focuses on the inability of the Public Hearing Board to award damages for mental anguish and emotional distress. At other times plaintiff uses broad language which seeks an award for "past and future financial loss, prejudgment interest, emotional distress, mental anguish, punitive damages, and such other and further relief as the Court deems proper." Amended Complaint (Doc. # 10) filed October 2, 2001. Under the RLA, both reinstatement and back pay are available remedies. See *Maas v. Frontier Airlines, Inc.*, 676 F.Supp. 224, 227 (D.Colo.1987).[1]

The Court must determine if plaintiff's remedy under the RLA is sufficient.[2] Plaintiff suggests that the RLA is insufficient because it authorizes reinstatement by a Public Hearing Board but the Board

---

**1.** To the extent that plaintiff collaterally attacks the Board's decision not to award back pay, his claim would be preempted since it would require the Court to analyze the right to binding arbitration under the CBA and the RLA. Ultimately, however, it appears that plaintiff is seeking damages for emotional distress and punitive damages, and not relitigation of the arbitrator's award. Indeed, from the pleadings in this case, it is unclear whether plaintiff received back pay and, if he did not, why not.

**2.** The Court looks to the remedy provisions under the RLA and not merely those of FELA.

FELA contains a remedy for workers who suffer accidents during the course of employment, and workers who are retaliated against for helping or testifying for a co-worker in a FELA claim. It does not contain a stand-alone remedy for the injured worker who files a claim and is discharged in retaliation for doing so. See *Foster v. Soo Line Railroad Co.*, 48 F.Supp.2d 892, 895 (D.Minn.1999) ("Circuits courts have uniformly held, however, that § 60 does not create a cause of action for retaliatory discharge where the employee is discharged for filing his own FELA claim or accident report."). The remedy for those employees lies under the RLA. *Id.*

cannot authorize damages for mental anguish and emotional distress.

Characteristics of an adequate statutory remedy include ample filing time, limits on the discretion of an administrative official in awarding relief, and an opportunity for the employee to pursue relief after administrative remedies are exhausted. See *Flenker*, at 205–208, 967 P.2d at 301–303. As examples of adequate statutory schemes, the Kansas Supreme Court has cited Title VII and the Energy Reorganization Act, 42 U.S.C. § 5851. *Id.* at 206–209, 967 P.2d at 302–03. OSHA, the subject of the litigation in Flenker, did not fulfill the criteria for adequacy. Under OSHA, the state administrator wholly controls whether an individual is able to obtain relief under the Act. *Id.* at 206–207, 967 P.2d at 301. In addition, OSHA actions must be filed within 30 days of the injury. *Id.* Finally, the structure of OSHA does not allow employees to pursue relief through other channels after exhausting administrative remedies. *Id.*

The remedies available to plaintiff under the RLA are significantly more comprehensive than those available under OSHA. The NRAB provides that if a dispute between an employee and employer cannot be resolved, the employee can bring the dispute before the NRAB. See 45 U.S.C. § 153. Grievances may be commenced up to two years after a cause of action accrues. *Id.* If the NRAB rules against the employee, he may take his dispute to federal district court. *Id.* Each NRAB division is comprised of four members selected by labor organizations and four members selected by the carriers. *Id.* Two members are selected to hear grievances and, if they are deadlocked, the division may add a neutral third member within ten days. *Id.* If the division cannot agree on a neutral third member, the division or the parties to the dispute may certify the matter to the Mediation Board which can then select a neutral referee. *Id.* The NRAB may award equitable relief such as reinstatement, restoration of seniority and back pay and other losses sustained due to an employee's improper dismissal. See 45 U.S.C. § 153(*o*) (award may include requirement for payment of money); see also *Mass*, 676 F.Supp. at 227. It cannot award damages for emotional distress or punitive damages. *Id.*

■ Although plaintiff takes issue with the fact that the RLA allows only equitable relief and not punitive damages or damages for emotional distress, see *Maas*, 676 F.Supp. at 227, the mere fact that a more comprehensive remedy may be available does not render inadequate that provided by the RLA. Therefore, the fact that plaintiff's remedy did not include punitive damages or damages for mental anguish and emotional suffering for the ten month period between his termination and his reinstatement is not dispositive. While it is true that plaintiff's award did not make him "whole," the adequacy of the RLA remedy is not gauged by that simple standard. In fact, in addressing the adequacy of the statutory remedy, the question is not whether it is adequate to make plaintiff whole for all losses, but whether it is adequate to further the public policy goals of the State of Kansas. In this regard, it is important to note that Kansas has never articulated any public policy which requires that all statutory schemes provide the full panoply of actual and punitive damages for any express or implied causes of action that may arise thereunder.

■ Plaintiff does not complain of the timeliness, impartiality, affordability or fairness of the process which the RLA establishes. Nor does he explain why the remedies available under the RLA are inadequate to advance any articulated interest of the State of Kansas in prohibiting retaliation for the filing of FELA claims.

Plaintiff simply asks the Court to hold that a remedy which provides something less than the full array of actual and punitive damages to an aggrieved employee is inadequate as a matter of law. The Court does not believe that the Kansas courts would agree with this proposition, or that the public policy of the State of Kansas requires that the exceptions to the doctrine of employment at will be extended to create an actionable retaliation claim under FELA. Due to plaintiff's failure to state a claim, defendant's motion to dismiss is therefore sustained.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss (Doc. # 15) filed October 12, 2001 be and hereby is **SUSTAINED.**