No. 90,730

LARRY D. HYSTEN, *Plaintiff*, v. BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, *Defendant.*

(85 P.3d 1183)

Opinion filed March 19, 2004.

*Alan V. Johnson,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., of Topeka, argued the cause, and *Stephen D. Lanterman,* of the same firm, was with him on the briefs for plaintiff.

*David R. Cooper,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the brief for defendant.

The opinion of the court was delivered by

BEIER, J.: This case comes to us on two certified questions from the United States Court of Appeals for the Tenth Circuit:

1. Independent of the Kansas alternative remedies doctrine, does Kansas law—including but not limited to *Flenker v. Willamette Industries, Inc.,* 266 Kan. 198, 967 P.2d 295 (1998); *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685 (1988); *Riddle v. Wal-Mart Stores, Inc.,* 27 Kan. App. 2d 79, 998 P.2d 114 (2000); and *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 630 P.2d 186 (1981)—recognize an action in tort based on an employer's discharge of an employee in retaliation for the employee's exercise of rights under the Federal Employers Liability Act (FELA), 45

U.S.C. § 51 *et seq.* (2000)? In other words, will the Kansas Supreme Court extend the public policy exception to the at-will employment doctrine to authorize a state tort action retaliation for filing a FELA claim?

2. If the answer to (1) is yes, under the Kansas doctrine of alternative remedies—as articulated in *Flenker,* 266 Kan. 198; *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645 (1988); or elsewhere—do the remedies available in the Railway Labor Act (RLA), 45 U.S.C. §151 *et seq.,* (2000) preclude an action in tort based on an employer's discharge of an employee in retaliation for the employee's exercise of rights under FELA? In other words, are an employee's rights *adequately* protected by the RLA, the statute that governs the employment relationships in the railway industry?

We answer the first question "yes" and the second question "no."

Plaintiff Larry D. Hysten was employed for 22 years by defendant Burlington Northern & Santa Fe Railway Company (Burlington Northern). Hysten began experiencing severe lower back pain. Although he was unsure of the cause, Burlington Northern wanted a commitment from him on whether the pain was work-related. Hysten eventually declared his injury to be work-related "to preserve his FELA rights." He was then disciplined for violating company regulations by, "among other things, failing to promptly report a work-related injury." Burlington Northern management eventually determined that Hysten should be terminated for violating the company's rules governing the reporting of work-related injuries.

Hysten filed suit in federal district court; his complaint included both federal and state law causes of action. The court granted Burlington Northern's motion for summary judgment on the federal law claims and declined to exercise supplemental jurisdiction over the state law claims.

Four months later, as a result of an RLA arbitration under Hysten's collective bargaining agreement, Burlington Northern reinstated Hysten with full retirement, seniority, and health benefits. Hysten was not awarded back pay, although that remedy generally is available under the RLA.

Hysten then brought this case in state district court, alleging "Burlington's termination in retaliation for . . . filing a claim un-

der FELA constituted a public policy tort under Kansas Law." Burlington Northern removed the case to federal court and filed a motion to dismiss.

The federal district judge held that the mere fact a collective bargaining agreement governed Hysten's contractual relationship with his employer did not eliminate his Kansas tort claim. Defendant had argued the existence of the agreement meant the RLA preempted any retaliation claim. In the judge's view, any analysis of Burlington Northern's duty to Hysten would require interpretation of the agreement. The district court examined the United States Supreme Court's decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994), and the Tenth Circuit's decisions in *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001), and *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419 (10th Cir. 1993), concluding:

" 'So long as the state law cause of action is concerned not with the employer's contractual rights to discharge the employee, but rather with its motives in exercising that right, the [collective bargaining agreement] is not relevant and preemption does not apply.' . . .

"In this matter, plaintiff does not argue that defendant violated his rights under the [collective bargaining agreement] or that defendant failed to perform its obligations under the [collective bargaining agreement]. Plaintiff and defendant complied with the grievance procedure delineated in the [collective bargaining agreement] and plaintiff was ultimately reinstated to his position. Plaintiff merely argues that under Kansas law he is entitled to additional remedies." *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 196 F. Supp. 2d 1162, 1166 (quoting *Jarvis*, 985 F.2d at 1427).

In the end, however, the district court granted Burlington Northern's motion to dismiss, holding Hysten had failed to state a claim under Kansas law. The court summarized its conclusion:

"Plaintiff does not complain of the timeliness, impartiality, affordability or fairness of the process which the RLA establishes. Nor does he explain why the remedies available under the RLA are inadequate to advance any articulated interest of the State of Kansas in prohibiting retaliation for the filing of FELA claims. Plaintiff simply asks the Court to hold that a remedy which provides something less than the full array of actual and punitive damages to an aggrieved employee is inadequate as a matter of law. The Court does not believe that the Kansas courts would agree with this proposition, or that the public policy of the State of Kansas requires that the exceptions to the doctrine of employment at will be extended to

create an actionable retaliation claim under FELA." *Hysten*, 196 F. Supp. 2d at 1169-70.

The parties appear to agree that the district court relied on alternative rationales for its decision: First, Kansas would not recognize a tort for wrongful discharge in retaliation for exercise of FELA rights; second, the adequate alternate remedy of the RLA would foreclose any such claim that existed.

Hysten's appeal of the district court dismissal to the Tenth Circuit has now generated the certified questions before us. Our review of these questions is unlimited. *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 765, 986 P.2d 377 (1999). The answer to a certified question must be based on our precedent, not on federal rulings interpreting Kansas law. *Flenker*, 266 Kan. at 201-02.

### Recognition of a Wrongful Discharge Retaliation Claim for Exercise of FELA Rights

"Kansas employment law is grounded in the doctrine of employment-at-will. In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party." *Riddle*, 27 Kan. App. 2d 79, Syl. ¶ 2.

So far, Kansas courts have departed from the at-will doctrine and recognized a common-law tort for wrongful discharge in violation of public policy in two types of cases, those in which a terminated employee has acted as a whistleblower and those in which the employee has filed a workers compensation claim. See *Palmer*, 242 Kan. at 900 (whistleblowing); *Murphy*, 6 Kan. App. 2d at 495-97 (workers compensation).

The parties to this case begin their arguments with contrasting characterizations of these earlier at-will exceptions. The plaintiff uses a broad brush, asserting these two categories of cases demonstrate the existence of an expandable public policy exception to the Kansas at-will doctrine. The defendant uses a brush picked nearly clean of bristles, reading our two earlier exceptions far too narrowly and specifically to support extension to this case. In reality, the question of which of the parties' dueling characterizations

is more accurate matters little. What does matter is the absence of a dispute over whether we have previously recognized the exception Hysten seeks to invoke. We have not.

" 'Our recognition of such causes of action is limited to wrongful discharge in violation of state public policy clearly declared by the legislature or by the courts.' " *Flenker*, 266 Kan. at 204 (quoting *Coleman*, 242 Kan. 804, Syl. ¶ 4). Thus our first step is an examination of Kansas public policy.

"The public policy of a state is the law of that state as found in its constitution, its statutory enactments, and its judicial decisions." *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001). "Before courts are justified in declaring the existence of public policy, the policy should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." *Riddle*, 27 Kan. App. 2d 79, Syl. ¶ 3.

Hysten urges us to draw an analogy to *Murphy*, 6 Kan. App. 2d 488, in which our Court of Appeals created an exception to the employment-at-will doctrine and allowed a wrongful discharge lawsuit when the plaintiff employee alleged he was discharged for filing a claim under the Kansas Workers Compensation Act. The court said:

"The Supreme Court of Indiana, in *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), supplied the first judicial recognition that discharge of an employee in retaliation for filing a workmen's compensation claim is actionable at law and may support an award of both actual and punitive damages. Commenting on the case, Vol. 2A Larson's Workmen's Compensation Law § 68.36, p. 68 (1980 Supp.), states: 'It is odd that such a decision was so long in coming. Perhaps the explanation may lie in the fact that the conduct involved is so contemptible that . . . few modern employers would be willing to risk the opprobrium of being found in such a posture.' We would add that such instances may also be rare because employers have simply assumed such conduct was either illegal, actionable or both." 6 Kan. App. 2d at 495.

The court also noted that the Illinois Supreme Court had held the protection afforded by workers compensation laws furthered sound public policy, and thus "an employee had a civil tort action against an employer who discharged her for filing a claim." 6 Kan.

App. 2d at 495 (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 [1978]). Our Court of Appeals then held:

"We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

Defendant Burlington Northern's first response to Hysten's *Murphy*-based argument is that recognition of a wrongful discharge claim for FELA retaliation would not further the purpose of the Kansas Workers Compensation Act. Because FELA is a federal rather than a state statute, and because the Kansas Workers Compensation Act expressly excludes claims arising under FELA, defendant asserts, the rationale of *Murphy* cannot apply here.

These hypertechnical arguments are unconvincing. We are attempting to discern the breadth and depth of underlying public policy, not defining the specific parameters for application of either statute. The mere fact that FELA is a federal statute and the Kansas Workers Compensation Act a state statute does not necessarily mean that the public policy promoted by one has an inadequate or nonexistent overlap with the public policy promoted by the other. We have previously recognized that federal legislation could have a role in defining wrongful discharge causes of action based on one's whistleblower status. See *Flenker*, 266 Kan. at 199 (Occupational Safety and Health Act violations); *Palmer*, 242 Kan. at 899 (Medicaid fraud). We agree with the Court of Appeals of Colorado, which has stated:

"[T]he mere fact that plaintiff's entitlement to compensation arises from a federal statute rather than a state statute should not, of itself, affect the importance of the public policy allowing injured employees to seek compensation or preclude plaintiff from asserting his claim of retaliatory discharge if FELA can be shown to establish a duty on the part of San Luis to pay compensation and a commensurate right to plaintiff to seek such payment." *Herrera v. San Luis Central Railroad Co.*, 997 P.2d 1238, 1240 (Colo. App. 1999).

Regardless of whether FELA or the Kansas Workers Compensation Act supplies the framework to support an injured worker's

pursuit of recovery, the public policy underlying that framework would be undermined if the worker could be fired for the exercise of his or her statutory right. Such a situation effectively releases an employer from the obligation of the statute. See *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495-96, 630 P.2d 186 (1981).

In addition, the mere fact that the Kansas Workers Compensation Act is designed to govern claims not governed by FELA tells us nothing about the nature of the policy underlying either statute. It tells us only that the Kansas Legislature was careful not to duplicate protections for on-the-job injuries already provided certain Kansas citizens because of their dual status as employees covered by FELA.

Burlington Northern's next response to Hysten's invocation of *Murphy* is a perennial favorite of litigants and their counsel, "parade of horribles." Should this court permit Hysten's cause of action to continue, defendant's argument goes, it would "lend the common law of Kansas to enforce any right or privilege created by Congress. This throws open the doors to the United States Code, the Code of Federal Regulations, and the Federal Register. Any federal law becomes fodder for a state law claim."

We disagree. Not every public policy underlying a federal statute or regulation is identical to a Kansas public policy as previously clearly expressed in our statutes, regulations, or case law. It happens that the public policy underlying FELA—providing a mechanism to allow certain workers injured on-the-job to recover from their employers—is identical to the public policy underlying the Kansas Workers Compensation Act. Such a perfect analog will rarely exist. Even when it does, as defendant has recognized in this action, preemption or the alternative remedies doctrine may prevent an aggrieved employee from pursuing a state cause of action for wrongful discharge.

Burlington Northern also argues that the weight of authority is opposed to recognition of this state tort cause of action.

It does this first by attempting to distinguish the *Herrera* case from Colorado. In *Herrera*, the court allowed a state tort action for retaliatory discharge based on the plaintiff's exercise of his

FELA rights. 997 P.2d at 1240-41. Burlington Northern argues that *Herrera* is weak authority because, unlike Hysten, the plaintiff in that case was not part of a collective bargaining agreement and thus not covered by the RLA. Although this is true, we disagree with Burlington Northern's prediction that *Herrera* would necessarily have come out differently if the plaintiff had been subject to a collective bargaining agreement. The Colorado Court of Appeals opinion merely observes that the cases cited to it by the defendant had precluded a state tort action because of RLA preemption, a factor not present before it. The opinion then notes that a plaintiff such as the one before it would have no remedy for wrongful discharge without a state tort. It also, tellingly, cites to *Sabich v. National R.R. Passenger Corp.*, 763 F. Supp. 989, 993 (N.D. Ill. 1991), for the proposition that the RLA does not preempt a retaliatory discharge claim *independent of* a collective bargaining agreement. 997 P.2d at 1241.

The Colorado judges then conclude:

> "Further, although FELA does not create a private cause of action to sue an employer under the statute, plaintiff was not bringing suit pursuant to FELA. Rather plaintiff asserted a state common law claim of retaliatory termination, relying on the public policy exception to at-will employment concerning his right to pursue a remedy under FELA without reprisal from his employer.
> "Here, plaintiff, in his complaint, stated that he had been awarded FELA benefits and that he had been terminated for asserting his right to seek such benefits in violation of the public policy that workers have an important public interest in not having to shoulder the financial burden for a work-related injury. Thus, the complaint sets forth a claim for retaliatory discharge based upon a public policy exception to the general doctrine of at-will employment, and the trial court erred in dismissing it." 997 P.2d at 1241.

This reasoning and language from *Herrera* do not support the weight defendant would have them bear. The court did not say that its decision on the state tort rose and fell on the applicability of the RLA. Indeed, it came much closer to saying that the RLA, in its view, was irrelevant to the inquiry at hand.

Burlington Northern next attempts to distinguish *Herrera* by saying the Colorado court found the public policy to be furthered was "that of protecting injured workers" while "*Murphy* relied on the [workers compensation statute] and implied a remedy for em-

ployee[]s that suffer because of the exercise of their rights under the [statute]." This argument ignores the *Murphy* court's express invocation of public policy and its reliance on the statute's underlying purpose. 6 Kan. App. 2d at 495-96. That purpose was obviously to protect injured workers.

Finally, as support for its "weight of authority" argument, Burlington Northern cites several federal cases, asserting that they counsel against allowing a common-law retaliation claim under FELA. Most of these cases are inapposite. Rather than dealing with recognition of a state tort for retaliatory discharge, they address federal preemption, the recognition of a private right of action under FELA, or exhaustion requirements. See, *e.g.*, *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (no private right of action); *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1293 (9th Cir. 1986) (no private right of action); *Minehart v. Louisville & Nashville R. Co.*, 731 F.2d 342, 344 (6th Cir. 1984) (exhaustion); *Choate v. Louisville & Nashville R. Co.*, 715 F.2d 369, 370-72 (7th Cir. 1983) (preemption); *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1025-26 (D. Minn. 1999) (preemption; no private right of action). The certified questions before us do not deal with these issues. The federal district court has already disposed of Burlington Northern's preemption argument, and Hysten does not attempt to rely on FELA as the source of his cause of action.

*Sabich* is the only one of the federal cases cited by Burlington Northern in which a federal court attempts to rule definitively on what is necessarily a point of state law. In that case, Judge Bua of the Northern District of Illinois observes that the Illinois Supreme Court has not previously interpreted its public policy exceptions to the at-will doctrine expansively and refuses to recognize a state cause of action for retaliatory discharge based on the plaintiff's exercise of FELA rights. 763 F. Supp. at 994-95. As we noted above, questions such as those before us cannot be answered by federal precedent. *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 201-02, 967 P.2d 295 (1998). The most that Judge Bua could properly do was speculate on Illinois' future course, a limitation on federal power apparently recognized in at least two of the other federal cases cited by Burlington Northern. See *Mayon v. Southern*

*Pacific Transp. Co.*, 805 F.2d 1250, 1253 (5th Cir. 1986) (noting Texas has not yet recognized tort); *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1053 (7th Cir. 1983), *cert. denied* 465 U.S. 1007 (1984) (characterizing Indiana law as unresolved).

It is important to remember that retaliatory discharge claims such as Hysten's arise under state tort law. They are not creatures of federal law or of collective bargaining agreements. See *Jackson*, 717 F.2d at 1058-59 (Posner, J., dissenting) (claim not founded on collective bargaining agreement, would exist without agreement; "retaliatory discharge, even if not forbidden by the agreement, may . . . be tortious under state law").

In *Jackson*, a majority of a Seventh Circuit panel held that the plaintiff's state retaliatory discharge claim for exercise of FELA rights was preempted by the RLA. *Jackson*, 717 F.2d at 1054-56 (federal interest embodied in policies of FELA not sufficient to rebut "persuasive preemption"). Judge Posner dissented, agreeing that federal courts should protect the RLA arbitrators' exclusive competence to interpret collective bargaining agreements but disagreeing with the majority's methods. Any necessary protection, he argued, should come at minimal expense to workers rights under state tort law.

"It puzzles me why we should go further and hold, as my brethren do in effect, that even if the arbitrators decide that the railroad had no contractual right to fire the employee, the employee may not maintain a tort action for retaliatory discharge. It is a grave matter for an employer to fire an employee for exercising a legal right. True, if he does this he may well be violating the collective bargaining agreement and the arbitrators can order the employee reinstated with back pay. But it would be surprising if compulsory arbitration of contract disputes was intended to wipe out the employee's common law rights other than his right to enforce the very contracts that are subject to the scheme of compulsory arbitration. It might be different if Congress had established an administrative agency to police tort or tort-like conduct in railroad employment, but it has not; it has contented itself with requiring arbitration of contract disputes.

". . . No one would argue that if Jackson's supervisor had punched him in the nose for refusing to obey an order Jackson could have prosecuted a complaint against the railroad only as a grievance before one of the arbitration panels, and not as a complaint in court for common law battery. I do not see why a case where a railroad intimidates (though not physically) workers who file accident claims should be treated differently." *Jackson*, 717 F.2d at 1060-61.

We have also recognized that an employee subject to a collective bargaining contract does not surrender state tort remedies that were neither included in the bargaining process nor intended by the parties to be a part of the contract *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 813, 752 P.2d 645 (1988) (overruling *Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 [1987]; *Smith v. United Technologies*, 240 Kan. 562, 731 P.2d 871 [1987]; *Cox v. United Technologies*, 240 Kan. 95, 727 P.2d 456 [1986]). We did not wish to immunize employers with collective bargaining contracts from "accountability for violations of state public policy." *Coleman*, 242 Kan. at 813 (citing *Midgett v. Sackett-Chicago, Inc.*, 105 Ill. 2d 143, 150, 473 N.E.2d 1280, 1283-84 [1984]).

Given all of the above, we hold that Kansas law recognizes a tort for retaliatory discharge based on an injured worker's exercise of his or her rights under FELA. The design and language of the Kansas Workers Compensation Act and the logic of *Murphy*, 6 Kan. App. 2d 488, persuade us that Kansas has a "thoroughly established" public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them for exercising their rights. It matters not that the vehicle for that exercise is a federal rather than a state statutory provision. The policy is the thing, and the first of the certified questions before us must be answered: "Yes."

### Adequacy of Alternative Remedy

"Under the alternative remedies doctrine, a state or federal statute would be substituted for a state retaliation claim if the substituted statute provides for an adequate alternative remedy. [Citations omitted.] The question to ask in resolving recognition of a state tort claim for retaliatory discharge is whether the statutory remedy is adequate and thus precludes the common-law remedy. [Citation omitted.]" *Flenker*, 266 Kan. at 202-03.

In this case, Burlington Northern argues that arbitration under the RLA is an adequate alternative remedy because it provides for reinstatement, restoration of seniority, and an award for economic loss. It also points out that a claimant may be represented by counsel and that awards must be in writing. It characterizes Hysten's inability to recover compensatory damages for pain and suffering

and punitive damages as relatively minor omissions from a comprehensive scheme of redress.

We held in *Flenker* that the remedy in § 11(c) of the Occupational Safety and Health Act was inadequate because (1) a plaintiff had only 30 days to file his or her claim; (2) the claim was filed with the Secretary of Labor, who had sole discretion to decide whether to pursue a wrongful discharge claim; and (3) the statute did not include guidelines " 'as to what factors the Secretary must or may consider to constitute an investigation.' " *Flenker*, 266 Kan. at 205-07. We focused on the allocation of "the decision to pursue an employee's claim of retaliatory discharge" to an administrative agency rather than to the plaintiff. *Flenker*, 266 Kan. at 208-10 (citing *Coleman*, 242 Kan. at 813-14).

In *Coleman*, as Burlington Northern concedes, we were critical of reliance on arbitration in the public policy tort arena:

"The grievance and arbitration procedure is an inappropriate forum for the enforcement of state public policy because arbitrators are bound by the limitations imposed by the terms of the collective bargaining agreement. . . .

"Arbitral procedures, while well suited to the resolution of contractual disputes, are comparatively inappropriate for the resolution of tort claims . . . . As Justice Powell reasoned . . ., the specialized competence of arbitrators pertains primarily to the law of the shop, and not the law of the land. The factfinding process in arbitration does not equate with judicial factfinding. Rules of evidence do not usually apply; the rights and procedures common to civil trials such as discovery, compulsory process, cross-examination, and testimony under oath are often severely limited or unavailable. [Citation omitted.] These limitations have a significant impact in a case of retaliatory discharge where the focus is on the employer's motive for the firing." *Coleman*, 242 Kan. at 813-14.

As in *Coleman*, the RLA process at issue here is arbitration, a process we have already held is far less than ideal.

In terms of control, one might say that Hysten could exercise more control over his claim in the first instance, when compared with the plaintiff in *Flenker*. Burlington Northern also argues that he had a right to appeal the ruling of the National Railroad Adjustment Board to federal district court. Although this is true, we agree with Hysten that the narrowness of the standard of review on that appeal robbed him of most of his control over the issues to be addressed. In the words of the United States Supreme Court,

the RLA provides that the Board's decisions shall be final and binding upon both parties to the dispute. An adverse decision may be appealed to the federal district court on only three grounds: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 93, 58 L. Ed. 2d 354, 99 S. Ct. 399 (1978) (citing 45 U.S.C. § 153[q]).

This narrow standard insulates the factfinding of the Board from careful judicial scrutiny. This is unsatisfactory, given our earlier observation that factfinding in arbitration is deficient when compared with factfinding in the judicial process. See *Coleman*, 242 Kan. at 813-14.

We also do not regard the unavailability of compensatory damages for pain and suffering and punitive damages as trivial. As we recognized in *Coleman*, a retaliatory discharge action, such as the one Hysten brings here, is designed to redress a violation of state public policy. *Coleman*, 242 Kan. at 813. The availability of compensatory damages beyond those designed to eliminate purely economic loss and particularly the availability of punitive damages can deter such violations. As Judge Posner said: "It is a grave matter for an employer to fire an employee for exercising a legal right." *Jackson*, 717 F.2d at 1060. Deterrence of such conduct is essential.

A recent federal case from the Northern District of Illinois held that the unavailability of punitive damages under the RLA did not make it an inadequate alternative to an action for retaliatory discharge under Illinois law. See *Emery v. Northeast Illinois Regional Commuter R. Corp.*, 2003 WL 22176077 (N.D. Ill. 2003). However, the decision suggests the result would have been the opposite if Illinois law would have permitted recovery of such damages in that instance. In contrast, Kansas law would permit recovery of punitive damages in Hysten's action for retaliatory discharge. See *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, Syl. ¶ 7, 630 P.2d 186 (1981).

We conclude that the remedy afforded Hysten by the RLA is not an adequate alternative to a retaliatory discharge action under

Kansas tort law. We are influenced by differences in process, differences in claimant control, and differences in the damages available. It may be that additional factors will also be influential in a future case. Here, all of these differences are enough to dictate that the second certified question be answered: "No."

We answer the first certified question in the affirmative and the second certified question in the negative. Kansas law recognizes a tort of retaliatory discharge for exercise of an injured employee's rights under FELA, and any RLA proceeding available to that employee is not an adequate alternative remedy.