No. 125,117

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHNNY KING,
*Appellant/Cross-Appellee*,

v.

UNIFIED SCHOOL DISTRICT 501,
*Appellee/Cross-Appellant*.

SYLLABUS BY THE COURT

1.

In a retaliatory discharge case, the employee need not prove that they expressly advised the employer of the legal basis for the claim that their actions were protected. The employer is charged with knowledge of the laws that apply to them as an employer. The employee is only required to outline the facts that give rise to the application of any legal protections claimed.

2.

Neither the Freedom from Unsafe Restraint and Seclusion Act (FURSA)—K.S.A. 2022 Supp. 72-6151 et seq.—and the attendant Kansas regulations that mirror it—K.A.R. 91-42-1 et seq.—nor the Paul D. Coverdell Teacher Protection Act of 2001 (Coverdell Act)—20 U.S.C. § 7941 et seq., create a public policy that would warrant an exception to Kansas' at-will employment doctrine.

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Oral argument held August 15, 2023. Opinion filed November 9, 2023. Case dismissed.

*Theodore J. Lickteig*, of Lickteig Law Firm, LLC, of Lenexa, and *Terence E. Leibold* and *Alex B. Atchison*, of Petefish, Immel, Hird, Johnson & Leibold, L.L.P., of Lawrence, for appellant/cross-appellee.

1

*J. Phillip Gragson*, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, L.L.P., of Topeka, for appellee/cross-appellant.

Before ARNOLD-BURGER, C.J., HILL and BRUNS, JJ.

ARNOLD-BURGER, C.J.:  Johnny King, a paraprofessional for Unified School District 501 (the District), was called to help with a disruptive student. Based on his response, the District terminated King for failing to follow emergency safety intervention policies and training. King sued the District for wrongful termination.

Prior to trial, the district court found that there is a public policy exception to Kansas' employment-at-will doctrine which protected King's continued employment for the District. Accordingly, the case was allowed to proceed to trial. After the close of King's evidence, the district court granted the District's motion for judgment as a matter of law. The district court found that King failed to establish that he took a protected action and that his termination was not pretextual.

King appeals the granting of the motion for judgment as a matter of law. The District cross-appeals the district court's finding that a public policy exception existed to override Kansas' employment at will doctrine. Although we find that the district court was correct in holding that King failed to establish his termination was pretextual, we also find that the district court erred in not dismissing the case based on King's failure to establish a public policy exception to the Kansas employee-at-will doctrine. Accordingly, King was not entitled to bring a wrongful discharge action in the first place and his case must be dismissed.

FACTUAL AND PROCEDURAL HISTORY

Johnny King was hired as a paraprofessional for the District, and in 2017 was assigned to Hope Street Elementary School (Hope Street). One of the job duties assigned to King was to assist with behavior control as needed. According to King, that ended up being a fairly significant portion of what he did in his day-to-day employment. Hope Street was considered a school for at-risk children—children who had little control of their behavior at times and were often disruptive.

The District's policy for emergency safety interventions, such as seclusion and restraint, called for limited safety interventions. Employees were encouraged "to utilize other behavioral management tools, including prevention techniques, de-escalation techniques, and positive behavioral intervention strategies." To that end, emergency safety interventions were "not [to] be used unless a student's conduct presents an immediate danger to self or others." The emergency safety interventions policy stated that all staff members were prohibited, in part, from using faceup or supine physical restraints.

As part of his employment, the District required King to be trained in the Mandt system. The Mandt System "is a relationally based program that uses a continuous learning and development approach to prevent, de-escalate, and if necessary, intervene in behavioral interactions that could become aggressive." The Mandt system prohibits using pain compliance, trigger points, or pressure points. It also prohibits hyperextension of any part of the student's body. The Mandt system also prohibits doing anything that potentially risks the hyperextension of any part of the student's body. In addition, any technique that involves substantial risk of injury, forces the student to the floor, chair, or wall is prohibited. As is any manual restraint that maintains the student on the floor in any position or any technique which puts or keeps the student off balance. In general, the least restrictive interaction needed to protect the student or others should be used.

When discussing the Mandt system and the training he received in it, King said that it never covered what to do in a situation where a student was hitting another person.

A few months after King started at Hope Street, student J.C., began acting out by "verbalizing and otherwise being disruptive." Ashley West, J.C.'s paraprofessional, told J.C. to take a break with her so they could discuss his behavior in a timeout room. West sat in a chair outside the timeout room while J.C. walked down the hallway toward her. As J.C. got close to West, he yelled at her and struck her with his fist. King attempted to get J.C. into the timeout room and J.C. resisted. J.C. tried to escape the timeout room while King attempted to close the door.

King said that he was not applying pressure to J.C. or trying to take his breath away when he attempted to put him in the timeout room. He did acknowledge pulling on J.C.'s foot to keep him into the timeout room. He also acknowledged that he might have tried pulling on J.C.'s shirt to keep him in the room. J.C. escaped the timeout room, and a social worker took him away and got him settled down.

A short video of the situation was recorded and is included in the record. The video shows J.C. attempting to get out of the timeout room while King shuts the door on him. J.C. ends up lying on his back, or supine, as he exits the room, although it is unclear if he was put on his back as a result of King grabbing him or if he stumbles as he leaves the room. The video ends with J.C. on his back with King pulling on J.C.'s shirt.

After the incident, Paula Swartzman-Waters, the Hope Street Coordinator and a Mandt trainer between 2012 and 2014, recommended that King be terminated for not following proper Mandt de-escalation techniques. In June 2017, Carla Nolan, the General Director of Human Resources for the District, sent King a letter notifying him of his proposed termination. The Board of Education approved the recommendation, and King's employment was terminated. King unsuccessfully appealed his termination.

4

King sued the District alleging one count of wrongful discharge in violation of public policy. The District moved for summary judgment arguing, in part, that King could not establish that he exercised a statutory or constitutional right that was recognized as a basis for a retaliatory discharge claim.

The district court denied the motion, recognizing a public policy exception to Kansas' at-will employment doctrine exists when a school employee takes reasonable actions to provide a safe environment for students and educators.

A jury trial was held in January 2022. At the close of King's evidence, the District filed a motion for judgment as a matter of law. In its motion, the District argued, in large part, that King failed to show that the District had knowledge of King's exercise of a right—which, according to the District's motion, is a necessary element of a claim for wrongful discharge.

The district court granted the motion for judgment as a matter of law.

King timely appealed arguing that the district court erred by finding that he failed to establish select elements of a retaliatory discharge claim. The District filed a timely notice of cross-appeal seeking review of the district court's finding that a public policy exception existed to override Kansas' employment at will doctrine.

ANALYSIS

I.      OUR STANDARD OF REVIEW ON BOTH THE APPEAL AND CROSS-APPEAL IS
        DE NOVO

A trial court's denial of a motion for judgment as a matter of law is reviewed de novo determining "whether evidence existed from which a reasonable jury 'could

5

properly find a verdict for the nonmoving party.'" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

When ruling on a motion for judgment as a matter of law, the district court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. The district court must deny the motion if reasonable minds could reach different conclusions based on the evidence. The appellate court must apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019).

In addition, to the extent we are required to interpret statutes, we also have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

II.     WE EXAMINE KING'S CLAIMS AS THEY RELATE TO THE ELEMENTS OF WRONGFUL
        DISCHARGE

To establish a prima facie case for wrongful discharge King was required to show: (1) he took a protected action; (2) the District knew about the protected action; (3) the District took an adverse employment action; and (4) a causal connection between the protected action and the adverse employment action. See *Hill v. State*, 310 Kan. 490, 495, 514, 448 P.3d 457 (2019) (listing elements for a retaliatory transfer).

Once a prima facie case is established, the burden shifts to the defendant to provide evidence of a legitimate reason for terminating the plaintiff. Once the defendant has done so, the plaintiff is then required to prove that the reasons offered were merely pretextual. 310 Kan. at 513.

6

The first question before this court is whether, when all facts and reasonable inferences are made in favor of King, the district court erred when it found that King (1) failed to establish that the District knew King took a protected action and (2) that King failed to establish a causal connection between the protected action and King's termination.

A. *King claims his action was protected by both state and federal statutes.*

King claims that his action was protected by the Freedom from Unsafe Restraint and Seclusion Act (FURSA)—K.S.A. 2022 Supp. 72-6151 et seq.—and the Paul D. Coverdell Teacher Protection Act of 2001 (Coverdell Act)—20 U.S.C. § 7941 et seq.

FURSA set out rules on emergency safety interventions. For example, under FURSA "[e]mergency safety interventions shall be used only when a student presents a reasonable and immediate danger of physical harm to such student or others with the present ability to effect such physical harm." K.S.A. 2022 Supp. 72-6153(a). Local school boards were required to "develop and implement written policies to govern the use of emergency safety interventions in schools." K.S.A. 2022 Supp. 72-6153(g). FURSA set the floor for the local school boards, as any policy implemented by the board "shall conform to the standards, definitions and requirements of [FURSA]." K.S.A. 2022 Supp. 72-6153(g).

FURSA expired on June 30, 2020. K.S.A. 2022 Supp. 72-6158. However, the Kansas Department of Education adopted regulations that largely mirrored the substance of FURSA. K.A.R. 91-42-1 et seq.

The Coverdell Act is meant "to provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 7942. The

Coverdell Act preempts state laws to the extent that state laws are inconsistent with the Coverdell Act, but it does not preempt any state law that provides additional protection from liability. 20 U.S.C. § 7945(a).

In substantive part, the Coverdell Act limits liability "for harm caused" by teachers in school if:

"(1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;

"(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;

"(3) if appropriate or required, the teacher was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;

"(4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher; and

"(5) the harm was not caused by the teacher operating a motor vehicle, vessel, aircraft, or other vehicle for which the State requires the operator or the owner of the vehicle, craft, or vessel to–

    (A) possess an operator's license; or

    (B) maintain insurance." 20 U.S.C. §7946(a).

B. *King was able to establish that his legal justification for appealing his termination was based on the FURSA or the Coverdell Act.*

Both parties, and the district court, acknowledge that the District was aware of King's actions. However, the district court noted that "there was no evidence introduced that the [District] was aware [King's] action was taken pursuant to [FURSA or the

8

Coverdell Act] or under the protection of said law." The district court went on to note that there was no evidence that information was provided to the District that King was purporting to act under the protection of the law or that he raised the issue of legal justification during the investigation or any proceedings prior to his current suit.

The district court went on to find that knowledge of the action taken by King "does not equate to knowledge of the exercise of a right" and that in a retaliatory discharge case, the employee must prove that the employer had knowledge of the right exercised prior to the termination. On appeal, King disagrees, arguing that the employee need only show that the employer must only know about the protected activity of the employee.

The district court based its finding on the Kansas Supreme Court's decision in *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988), where the court addressed a wrongful discharge claim in a whistleblower case. The only knowledge element set out by the Kansas Supreme Court in *Palmer* is that "the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee." 242 Kan. at 900.

The district court's decision that King was required to show that the District had knowledge of the right exercised reads too much into *Palmer*. See 242 Kan. at 900. Requiring a plaintiff to prove that that a defendant in a retaliatory discharge case had knowledge of the right exercised provides a perverse incentive to defendants to remain ignorant of the law.

The Tenth Circuit addressed a similar issue in *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1121-22 (10th Cir. 2001), a retaliatory discharge case involving workers compensation, where the circuit court found that Kansas' "'knew or should have

9

known' standard charges an employer with knowledge of those *facts* concerning an employee's workplace injury reasonably available to the employer at the time."

As the court in *Bausman* put it, "an employer cannot adopt a workplace policy by which the employer abdicates its duty to see, to hear, and to think." 252 F.3d at 1121. The same standard should apply here. King was not required to prove that the District was aware of the rights that King purported to act under. And even if the District did need to know about the claimed rights, the District should have known about them given its position as an employer of teachers and paraprofessionals.

The district court erred when it determined that King did not meet his evidentiary burden. In a retaliatory discharge case, the employee need not prove that they expressly advised the employer of the legal basis for the claim that their actions were protected. The employer is charged with knowledge of the laws that apply to them as an employer. The employee is only required to outline the facts that give rise to the application of any legal protections claimed. Accordingly, King was not required to prove that the District knew he had exercised a right. Instead, he was only required to show that the District knew about the action that he took. There is no question that the District knew about King's actions in this case.

C. *King established a causal connection between the protected activity and his termination.*

The district court also found that King failed to prove there was a causal connection between the protected activity and his termination. In the district court's decision, the court equated the causal connection element with King's duty to prove that any justification for his termination offered by the District was pretextual.

10

On its face, there was a causal connection between King's actions and his termination. King was terminated because of the actions he took to secure J.C.

Once King has established a prima facie case, which we find he has here, the burden shifts to the District to provide evidence of a legitimate reason for terminating King. If the District is able to meet its burden, King is then required to prove that the reasons offered were merely pretextual. *Hill*, 310 Kan. at 513.

D. *The District established that King was terminated solely for his failure to follow the MANDT system, and King failed to establish that the reason given was pretextual.*

"To raise a triable issue of whether the employer's reason is mere pretext, the employee's evidence may include that the employee was treated differently than others similarly situated; the employer's treatment of the employee before the protected action; and the employer's response to the protected action." *Hill*, 310 Kan. at 518.

King argues that he showed the reason for his termination was pretextual because he was treated differently than other similarly situated employees. The evidence does not support disparate treatment.

King was not similarly situated to any other employee involved in the incident with J.C. King was the only employee to physically engage with J.C. He was the only employee to grab J.C. by the leg and drag him into the timeout room. And he was the only employee who attempted to close the timeout room door on J.C. To say that the reason for termination was pretextual because similarly situated employees were treated differently is a step too far when there were no similarly situated employees. The situation would be different if King, like the other employees, had not physically intervened and then been terminated. But that is not what happened here. King was the

11

only employee to physically intervene with J.C., and King was the only employee terminated.

Nor does King raise any other factors to establish that the termination was pretextual in his brief. He notes that other factors exist, such as the temporal proximity between the act and the termination, evidence that the stated reason for termination was false, or evidence that the defendant acted contrary to a written company policy. But he does not point to any evidence or argument on his part that the other factors support a finding that his termination was pretextual. Instead, he hangs his hat on the similarly situated employee factor which, as discussed above, has limited weight here.

E. *Kansas does not require that an employee establish the employer's decision was made in bad faith to prove it was pretextual.*

The district court in this case also found that there was no evidence to show that the District's decision to terminate King was not done with a good-faith belief that King violated the Mandt guidelines.

In *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004), the Tenth Circuit discussed the role of whether the employer acted in good faith in terminating an employee's employment in the context of whether the termination was pretextual. There, the court stated that the "'relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs.'" 365 F.3d at 924-25 (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 [10th Cir. 1999], *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 [2002]).

Kansas appellate courts have not yet adopted the honest belief doctrine, and we are not prepared to do so here.

### F. *The district court was not bound by its earlier summary judgment decision.*

Prior to trial the district court denied the District's motion for summary judgment finding there was evidence that King's termination was pretextual.

The court noted that other employees were present at the incident and were not terminated. As the court put it in its order, had the other employees "followed the appropriate Mandt de-escalation procedures at the early stages given its alleged invariable success, it is possible that the Plaintiff's emergency intervention would have been rendered unnecessary." The court went on to say "the [District] places the sole onus on [King] for application of these guidelines. The evidence could suggest that [King] inherited a situation where Mandt was no longer applicable and J.C. was not susceptible to its effect." The court acknowledged that King was "the only person who physically intervened in response to the physically aggressive conduct of J.C., but it is equally true that the others who were present apparently also failed to appropriately apply de-escalation procedures, assuming their inevitable success." Ultimately, in its order denying the motion for summary judgment, the district court believed that King "provided evidence sufficient to create a legitimate question as to whether the [District's] stated reason for [King's] termination was pretextual."

On appeal, King argues the district court should have been bound by its earlier decision in its order denying the motion for summary judgment and, as a result, should have found that there was sufficient evidence to deny the motion for judgment as a matter of law, at least on this particular issue. Alternatively, he argues that he presented sufficient evidence at trial to establish that his termination was pretextual, even if the district court was not required to follow its prior decision.

13

The law of the case doctrine is a discretionary policy which generally means that a court will refuse to reopen a matter that has already been decided in the case, without limiting the court's power to do so. The law of the case is used, in part, to avoid indefinite relitigation of the same issue. *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998).

King's argument regarding the law of the case doctrine, and its application in the current case, is extremely limited. He gives a brief overview of the doctrine and then states, without specific citations backing up his assertion, that the doctrine should have barred the district court from determining that King failed to establish a causal connection between his action and his termination because he failed to show that the termination was pretextual. But as stated above, the law of the case doctrine is discretionary and does not prevent a court from readdressing an issue it has already decided. In this case, the court decided the issue at the summary judgment stage and then revisited its decision after hearing evidence at trial.

And after looking at the evidence as outlined above, we do not believe that the district court was wrong to reconsider its earlier decision.

In sum, King fails to establish that the reason for his termination was pretextual. He only argues that he was similarly situated to other employees who were not terminated. But King alone engaged in a physical altercation with J.C., which the District believed violated Mandt guidelines under the circumstances. The other employees involved were not accused of violating Mandt guidelines and were not terminated.

Accordingly, the district court did not err by granting the District's motion for judgment as a matter of law on King's wrongful discharge claim.

Even though we affirm the district court's ultimate decision as it relates to King's failure to meet his burden of proof, it all becomes irrelevant when we examine the District's cross-appeal.

III.     KING WAS AN AT-WILL EMPLOYEE WHO COULD BE TERMINATED FOR ANY REASON

The District claims the district court erred in recognizing a public policy exception to Kansas' at-will employment doctrine when a school employee takes reasonable actions to provide a safe environment for students and educators. We agree.

"Kansas employment law is grounded in the doctrine of employment-at-will. In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party." *Riddle v. Wal-Mart Stores, Inc.*, 27 Kan. App. 2d 79, 86, 998 P.2d 114 (2000). The public policy exceptions are limited. In *Hill*, 310 Kan. at 501, the Kansas Supreme Court listed the six exceptions recognized at the time: (1) filing a claim under the Kansas Workers Compensation Act; (2) filing a claim under the Federal Employers Liability Act; (3) whistleblowing; (4) exercising a public employee's First Amendment right to free speech on an issue of public concern; (5) filing a claim under the Kansas Wage Payment Act; and (6) invoking rights under the Fair Labor Standards Act or the Kansas Minimum Wage and Maximum Hours Law.

When determining whether a public policy exception to Kansas' at-will employment exists, three scenarios exist:

"(1) The legislature has clearly declared the state's public policy; (2) the legislature enacted statutory provisions from which public policy may reasonably be implied, even though it is not directly declared; and (3) the legislature has neither made a clear

15

statement of public policy nor can it be reasonably implied." *Campbell v. Husky Hogs*, 292 Kan. 225, 230, 255 P.3d 1 (2011).

The recognition of a public policy exception

"has rested on a principle of deterrence against employer reprisal for an employee's exercise of a legal right. And in those instances in which an employee is exercising a statutory right created by the legislature, we have noted that such deterrence serves not only the employee's interests but also those of the state and its people. This is because statutory rights exist only because of the legislature's determination that such a right is in the public interest." *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, 556, 304 P.3d 1226 (2013).

FURSA, and the similar Kansas regulations, do not create a public policy that would warrant an exception to Kansas' at-will employment doctrine. First, it does not clearly state that it is the public policy of the State, let alone clearly state that it is the public policy of the State to protect the continued employment of teachers and other school professionals who restrain a student. See K.S.A. 2022 Supp. 72-6151 et seq. Nor can a public policy protecting the continued employment of teachers or other professionals who restrain students be reasonably implied.

FURSA limits emergency safety interventions to "only when a student presents a reasonable and immediate danger" to self or others, but it does not focus on protecting the teacher or other professional restraining the student. K.S.A. 2022 Supp. 72-6153(a). Instead, it requires protection for the students who might potentially be restrained. And if an emergency restraint occurs, it provides a procedure for parents "to file a complaint with the local board" if the parent believes "that an emergency safety intervention has been used on the parent's child in violation of the act, rules and regulations or the local board's emergency safety intervention policy." K.S.A. 2022 Supp. 72-6153(g)(2)(A); see K.A.R. 91-42-4(f).

16

FURSA does not operate like the recognized public policy exceptions set out in *Hill*. It does not provide protections for a teacher who restrains a student, nor does it offer some sort of appeal process for a teacher disciplined for restraining a student. This is not a situation like a classic workers compensation retaliation case where an employee is injured, files a claim, and is retaliated against because he or she took the statutorily authorized action of filing a claim. Instead, FURSA and the similar regulations provide protections for students.

Similarly, the Coverdell Act does not protect King in this situation. The Coverdell Act protects a teacher from liability "for harm caused by an act or omission of the teacher on behalf of the school" if certain conditions are met. 20 U.S.C. § 7946(a). Those conditions require the teacher to act in a manner consistent with federal, state, and local laws, rules, and regulations. 20 U.S.C. § 7946(a)(2). But the Coverdell Act does not limit an employer's ability to terminate a teacher for restraining a student in a manner inconsistent with school policy. Instead, the Coverdell Act's main protection for teachers is that it prohibits punitive damages to be awarded against the teacher unless the teacher's actions constituted "willful or criminal misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed." 20 U.S.C. § 7946(c)(1). In addition, the Coverdell Act limits a teacher's liability to "only for the amount of noneconomic loss allocated to that [teacher] in direct proportion to the percentage of responsibility of that [teacher]" for the harm claimed. 20 U.S.C. § 7947(b)(1)(A).

The Coverdell Act, like FURSA and the similar regulations, does not operate like the recognized public policy exceptions. It limits a teacher's liability in certain circumstances, but it does not provide a teacher carte blanche in restraining a student. King was still required to act within the confines of the law and regulations, both of which required the local board to create and implement written policies to govern the use of emergency safety interventions in schools. See K.S.A. 2022 Supp. 72-6153(g); K.A.R. 91-42-3(a). The Coverdell Act, FURSA, and the Kansas regulations do not protect a

17

teacher from termination after the teacher has violated district policy and statutory requirements.

FURSA, the similar regulations, and the Coverdell Act do not operate to create a public policy exception to Kansas' employment-at-will doctrine. Neither the laws nor the regulations clearly state that it is a public policy for Kansas. Nor can a public policy protecting teachers from termination be reasonably implied.

This is especially true when considering that King did not appear to act within the confines of the law and the regulations when he was restraining J.C. K.S.A. 2022 Supp. 72-6153(f)(1) prohibits "supine, or face-up physical restraint." K.A.R. 91-42-2(e)(2) also prohibits supine restraints. And the Coverdell Act requires teachers' actions to conform with State and local laws and regulations. 20 U.S.C. § 7946(a)(2). In the district court's order denying the motion for summary judgment, King admitted that J.C. was supine in the video of their altercation. There is not a public policy protecting teachers or paraprofessionals from termination after using a prohibited restraint on a student.

The district court makes much of the "[e]mergency safety interventions *shall* be used only when a student presents a reasonable and immediate danger of physical harm" in its order denying the District's motion for summary judgment. (Emphasis added.) K.S.A. 2022 Supp. 72-6153(a); see K.A.R. 91-42-2(a). The district court read that language as essentially imposing a duty on King to restrain J.C. But the language in K.S.A. 2022 Supp. 72-6153(a) and K.A.R. 91-42-2(a) does not impose a duty to act on teachers and paraprofessionals. Instead, when read in the context of the rest of the law and regulations, the "shall" operates to stop teachers and paraprofessionals from acting unless absolutely necessary and, if necessary, in a safe manner. To read otherwise ignores the clear protections that FURSA and the similar regulations afford students.

18

The district court erred when it determined that FURSA, the similar regulations, and the Coverdell Act established a public policy which created an exception to the employment-at-will doctrine of Kansas. Because there is not a public policy exception, King cannot show that his continued employment was protected under Kansas law. As an employee in Kansas, without a demonstrable contract stating otherwise, King's employment was at-will, and he could not sue for wrongful termination. See *Riddle*, 27 Kan. App. 2d at 86.

In sum, although we find that the district court was correct in holding that King failed to establish his termination was pretextual, we also find that the district court erred in not dismissing the case based on King's failure to establish a public policy exception to the Kansas employee-at-will doctrine. Accordingly, King was not entitled to bring a wrongful discharge action in the first place and his case must be dismissed.

Case dismissed.